120 T.C. No. 9


UNITED STATES TAX COURT



CONNIE A. WASHINGTON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 1828-01.                  Filed April 21, 2003.


    P and her then husband, H, filed a joint Federal
income tax return for 1989 showing tax owed; they did not
pay the tax with the return.  R garnished P's wages and
applied P's overpayments of tax from 1992 and 1994-98 to
the unpaid 1989 tax liability.  P requested relief under
sec. 6015(f), I.R.C.  R denied P's request for relief.
P then filed a petition in this Court seeking a review of
R's determination and requesting (pursuant to sec.
6015(g), I.R.C.) a refund of her garnished wages and the
overpayments of tax from 1992 and 1994-98.  R asserts
that even if P is entitled to relief under sec. 6015(f),
I.R.C., sec. 6015, I.R.C., does not apply to the portion
of the tax liability that was paid on or before July 22,
1998.

    Held:  P is entitled to relief under sec. 6015(g),
I.R.C.  R's denial of such relief was an abuse of
discretion.

Held, further, P is entitled to a refund of her wages garnished in June 1998 and the overpayment of tax for 1996-98, which were applied to the unpaid 1989 tax liability. Sec. 6015, I.R.C., applies to the full amount of any preexisting tax liability for a particular taxable year, if any of that liability remains unpaid as of the date of enactment, and not just to portions of tax liability that remain unpaid after July 22, 1998, the date of enactment of Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g)(1), 112 Stat. 740. Flores v. United States, 51 Fed. Cl. 49 (2001), followed.

Held, further, pursuant to sec. 6015(g)(1), I.R.C., P's refund is limited to the time restraints for filing refund claims under sec. 6511, I.R.C.

Connie A. Washington, pro se.

James R. Rich, for respondent.

JACOBS, Judge: Respondent determined that petitioner is not entitled to relief from joint liability for tax under section 6015(f) for 1989 with respect to a joint return filed with Kenneth Washington.[1] Petitioner filed a petition under section 6015(e)(1) seeking review of respondent's determination.

The issues for decision are (1) whether respondent's denial of petitioner's request for relief pursuant to section 6015(f) was an abuse of discretion, and, if so, (2) whether petitioner is entitled to a refund of all amounts paid/applied toward the tax shown as owed on the 1989 joint return.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and attached exhibits are incorporated herein by this reference.

A.   Background

Petitioner resided in Beaufort, South Carolina, on the date the petition in this case was filed.

Petitioner and her former spouse, Kenneth Washington (Mr. Washington), were married in 1970.  Petitioner and Mr. Washington permanently separated in 1992; they were divorced in 1997.  During their marriage, petitioner and Mr. Washington had two children who at the time of trial in this case were ages 14 and 16.  Petitioner is a high school graduate.  At all relevant times, she was employed as a Government purchasing agent with the Marine Corps Air Station.  Petitioner has been employed by the Federal Government for approximately 20 years.

At all relevant times, Mr. Washington was a self-employed carpenter.  Mr. Washington did not discuss his business or financial dealings with petitioner.

B.   The Unpaid 1989 Tax Liability

On April 15, 1990, petitioner and Mr. Washington jointly filed a Form 1040, U.S. Individual Income Tax Return, for 1989 (the 1989 joint return) that was prepared by a tax return preparer. Petitioner provided her Form W-2, Wage and Income Statement, to the

tax return preparer and signed the 1989 joint return. Petitioner had no other involvement in the preparation of the 1989 joint return. On the 1989 joint return, petitioner and Mr. Washington reported (1) wages of $16,160 attributable to petitioner's employment as a Federal purchasing agent, and (2) self-employment income of $23,487 attributable to Mr. Washington's carpentry business. After applying the $1,943 withholding from petitioner's wages, there remained a $4,779 balance due for 1989 (the unpaid 1989 tax liability). The unpaid 1989 tax liability was not paid when the 1989 joint return was filed.

No discussions took place between petitioner and Mr. Washington about the preparation or filing of the 1989 joint return. Nor did they discuss the payment of tax owed. Petitioner believed that because the unpaid balance of the tax shown on the 1989 joint return resulted from Mr. Washington's failure to pay estimated tax on his business earnings, he alone was responsible for the payment of, and would pay, the tax owed.

Petitioner and Mr. Washington were divorced in 1997. Petitioner received no assets from the dissolution of the marriage. Petitioner was given custody of the two children. Mr. Washington did not pay spousal or child support to petitioner. The divorce decree was silent as to whether petitioner or Mr. Washington should pay the unpaid 1989 tax liability.

Petitioner and her children reside in a small rental house. Petitioner is the sole provider. She has the use of an automobile but does not own it.

C.  Collection Action on the Unpaid 1989 Tax Liability

Petitioner claimed a filing status of married filing separately on her 1992 and 1994-95 Federal income tax returns and head-of-household on her 1996-98 returns. On her 1992 and 1994-98 Federal income tax returns, petitioner reported overpayments of tax; she requested refunds of those overpayments. The overpayments of tax were not refunded to petitioner. Instead, the overpayments were applied to the unpaid 1989 tax liability as follows: $694.30 from 1992 (applied April 15, 1993), $991.78 from 1994 (applied April 15, 1995), $1,030 from 1995 (applied March 18, 1996), $523 from 1996 (applied March 10, 1997), $535 from 1997 (applied March 30, 1998), and $2,001 from 1998 (applied April 15, 1999).[2]

In addition to the aforementioned overpayments of tax for years subsequent to 1989, respondent's records reflect that on September 30, 1992, and June 16, 1998, there were payments of $200 and $408.95, respectively, applied to the unpaid 1989 tax liability. The $408.95 payment resulted from the garnishment of petitioner's wages; the record is silent as to the source for the $200 payment.

---

[2]  An overpayment of tax with interest of $111.02 from 1988 was also applied to the 1989 tax liability.

The Internal Revenue Service (IRS) issued to the Defense Accounting Office a Notice of Levy on Wages, Salary, and Other Income, Form 668-W(c) (the notice of levy), dated April 9, 1998, and signed by Revenue Officer Barbara Whalen (Revenue Officer Whalen), seeking to garnish petitioner's wages. The notice of levy showed that petitioner and Mr. Washington were liable for unpaid taxes and additions totaling $70,305.23, of which $809.01 of unpaid tax and $4,557.27 of statutory additions related to 1989. The remaining amount was attributable to 1991 ($3,052.21), 1992 ($32,255.95), 1993 ($25,578.40), and a civil penalty for 1988 ($4,052.39). Mr. Washington's name and address were typed below "Name and Address of Taxpayer" on the notice of levy. However, his name and address were crossed out, and petitioner's name and address were inserted.

On May 7, 1998, petitioner received a letter from the Defense Finance and Accounting Service informing her that another notice of levy had been issued on petitioner's wages. The letter stated that her wages would be subject to garnishment until the $70,305 debt was collected. Petitioner was instructed to complete and return parts 3 and 4 of the notice of levy. She was informed that failure to do so would result in her receiving a biweekly check in the amount of $240.38 (the personal exemption amount), with the remainder (approximately $400) being forwarded to the IRS.

On May 21, 1998, in a letter to the IRS Problem Resolution Office, petitioner requested that the levy be released and that her account be placed on an "uncollectible status". In her letter, petitioner enclosed a copy of Form 433-A (collection information statement for individuals) and stated:

> I do not owe these taxes, my ex-husband does. Here is my situation, my husband and I are divorced. I have filed my taxes every year in which every year my federal refund is taken by the IRS.
>
> When we were married, I filed jointly with him, not knowing that it would affect my credit status like this. He had a business and it failed and these taxes belong to him not me in accordance with the wage levy.
>
> If my wages are garnished because of this it would cause an "ECONOMICAL HARDSHIP" on me and my children. * * *

On June 16, 1998, $408.95 attributable to the garnishment of petitioner's wages was applied to the unpaid 1989 tax liability. On June 22, 1998, petitioner met with Revenue Officer Whalen. In a followup letter to Revenue Officer Whalen, dated July 15, 1998, petitioner again pleaded financial hardship for herself and her family and inquired if anything could be done to place her account on an "uncollectible status". She also requested that the penalties and interest assessed against her be abated, reiterating that the taxes owed were attributable to her former husband.

On March 8, 1999, petitioner received a second letter from her employer's accounting department informing her that yet another IRS notice of levy for $8,425.12 had been received. The 1999 notice of levy was signed by Revenue Officer Whalen. As with the first

notice of levy, below "Name and Address of Taxpayer", Mr. Washington's name and address were typed in and crossed out, and petitioner's name and address were inserted. Of the total amount sought, $400.06 of unpaid tax and $4,810.88 of statutory additions related to 1989. The remaining $3,214.18 related to 1991. Again, petitioner was instructed to complete the notice of levy and was informed that failure to do so would result in her receiving a biweekly check of $240.38 and the remainder (approximately $400) being forwarded to the IRS.

Petitioner again met with Revenue Officer Whalen. In a letter to Revenue Officer Whalen, dated March 13, 1999, petitioner submitted the information that Revenue Office Whalen had requested at their prior meeting. In the letter, petitioner stated:

> As I stated in our last meeting and letters that I have sent certified to you and the Problem Resolutions Officer I CANNOT afford my pay to be garnished for over $400.00 every 2 weeks.
>
> A payment of $240.38 every two weeks is not feasible for myself and my 2 children to live on. This deduction would cause a serious hardship financially on me. I have cooperated as much as I could and told you I wasn't responsible for the amount being owed.
>
> I have filed my taxes faithfully every year only to have my taxes taken for something I was not responsible for. I feel that this is not fair or should be my responsibility.
>
> Again, if you need anymore additional information, I would be more than happy to help you out. My status has not changed from the last time we have met.
>
> Again, please don't garnish my check because this is the only income my family and I have to survive on.

On April 26, 1999, Revenue Officer Whalen issued a Form 668-D, Release of Levy/Release of Property from Levy, releasing petitioner's wages from levy.

D.   Summary of Assessments and Credits

Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, Form 4340, dated June 7, 2001, lists the following with respect to petitioner's 1989 taxable year:[3]

Adjusted gross income - $38,849
Taxable income - $22,013

| Date | Explanation Of Transaction | Assessment Other Debits (Reversal) | Payment, Credit (Reversal) | Assessment Date (23C, RAC 006) |
|---|---|---|---|---|
| 4/15/1990 | Return filed & tax assessed 07221-119-30596-0 199020 | $6,722.00 | | 5/28/1990 |
| 4/15/1990 | Withholding credit & excess FICA | | $1,943.00 | |
| | Failure to pay tax penalty   199020 | 47.79 | | 5/28/1990 |
| | Interest assessed 199020 | 62.32 | | 5/28/1990 |
| 4/15/1990 | Overpaid credit applied 1040   198812 | | 100.00 | |
| 9/24/1990 | Interest overpayment credit 1040   198812 | | 11.02 | |
| 10/25/1991 | Federal tax lien | | | |
| 2/3/1992 | Fees & collection costs | 5.00 | | |
| 9/30/1992 | Subsequent payment | | 200.00 | |
| 4/15/1993 | Overpaid credit applied 1040   199212 | | 694.30 | |
| 2/7/1991 | Legal/Bankruptcy suit pending | | | |
| 2/7/1994 | Legal/Bankruptcy suit | | | |

---

[3]   The last entry on the Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, was Feb. 6, 2001.  Petitioner maintains that the Form 4340 does not reflect overpayments of $1,322 and $1,254 from her 1999 and 2000 Federal income tax returns and a rebate check of $500 in 2001 that were applied toward the outstanding balance.

|  |  |  |  |  |
|---|---|---|---|---|
|  | pending |  |  |  |
| 12/16/1994 | Legal/Bankruptcy suit no longer pending |  |  |  |
| 4/15/1995 | Overpaid credit applied 1040   199412 |  | $991.78 |  |
| 3/18/1996 | Overpaid credit applied 1040   199512 |  | 1,030.00 |  |
| 3/10/1997 | Overpaid credit applied 1040   199612 |  | 523.00 |  |
| 3/30/1998 | Overpaid credit applied 1040   199712 |  | 535.00 |  |
| 6/16/1998 | Subsequent payment miscellaneous payment |  | 408.95 |  |
| -/--/1999 | Overpaid credit applied 1040   199812 |  | 2,001.00 |  |
|  | Failure to pay tax penalty 199918 | 822.80 |  |  |
|  | Interest assessed 199918 | 778.14 |  | 5/17/1999 |
| 2/26/2001 | Legal/Bankruptcy suit pending[1] |  |  |  |
| 5/28/1990 | Notice of balance due |  |  |  |
| 6/28/1990 | Notice of intent to levy |  |  |  |
| 5/15/1995 | Notice of intent to levy |  |  |  |

Assessed items balance due                                    .00

[1] The entries of 2/7/91 and 2/7/94 reflect bankruptcy suits filed by petitioner and Mr. Washington which were subsequently discharged on 12/16/94.  The 2/26/01 entry reflects the legal proceeding commenced in this Court by petitioner.

E.   Petitioner's Request for Relief From Joint Liability for Tax Under Section 6015

On or about June 29, 1999, respondent received from petitioner multiple Forms 8857, Request for Innocent Spouse Relief, in which she sought relief from joint liability for the years 1995 through 1998.  Attached to that form was a letter dated June 17, 1999, in which petitioner requested tax refunds for each year, together with interest.  Petitioner stated that her credit had been impaired as a result of the IRS liens.  She requested that the liens be removed and that she be relieved of all liability for taxes, interest, penalties, and other accruing amounts.

Although petitioner stated in her claim for relief that she was seeking relief with respect to the 1995-98 tax years, respondent treated petitioner's claim as one for 1989. On November 13, 2000, respondent issued to petitioner a Notice Of Determination Concerning Relief From Joint and Several Liability Under Internal Revenue Code Section 6015 (notice of determination). In the notice of determination, respondent determined that petitioner was not entitled to relief from joint liability under section 6015(b), (c), or (f) with respect to the 1989 tax liability. The following explanation was given:

> You do not qualify for relief under Internal Revenue Code sections 6015(b) or 6015(c) because your request is a request for relief for an underpayment of tax and not an understatement of tax. Only Internal Revenue Code section 6015(f) allows for relief in certain underpayment situations.

> You do not qualify for relief for the underpayment under Internal Revenue Code section 6015(f) for tax year 1989 because you had knowledge that the tax underpayment was not being paid when the return was filed. You have not shown that your former husband intended to pay the balance due at the time or had the ability to pay the balance due at that time. You have also not shown that it would be inequitable to hold you liable for the balance due from the jointly filed 1989 income tax return.

On February 7, 2001, petitioner timely filed a petition in this Court seeking a review of respondent's determination. As of the date of trial, the assessed but unpaid 1989 tax liability, consisting mainly of interest, was $3,500 to $4,500.

- 12 -

OPINION

As a general rule, spouses filing joint Federal income tax returns are jointly and severally liable for all taxes due.  Sec. 6013(d)(3).  However, under certain circumstances, section 6015 provides relief from this general rule.[4]

Section 6015 applies to any liability for tax arising after July 22, 1998, and to any liability for tax arising on or before July 22, 1998, but remaining unpaid as of such date.  Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201(g), 112 Stat. 685, 740.  Section 6015 does not apply if the tax was paid in full on or before July 22, 1998.  Brown v. Commissioner, T.C. Memo. 2002-187.

Section 6015 significantly relaxed the requirements for relief from joint liability by providing three avenues for obtaining relief to a taxpayer who has filed a joint return:  (1) Section 6015(b) (which is similar to former section 6013(e)) provides relief with respect to understatements of tax attributable to certain erroneous items on the return; (2) section 6015(c) provides relief for a portion of an understatement of tax for taxpayers who are separated or divorced; and (3) section 6015(f) (potentially the broadest of the three avenues and the avenue directly at issue in

_____

[4]  Sec. 6015 was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 685, 734.  Prior to the enactment of sec. 6015, relief from the imposition of joint and several liability for spouses filing joint returns was available under sec. 6013(e).

this case) confers upon the Secretary discretion to grant equitable relief for taxpayers who otherwise do not qualify for relief under section 6015(b) or (c).

Petitioner requested relief under section 6015 from liability for the payment of the tax reported on the 1989 joint return that was not paid when the return was filed. Respondent treated petitioner's request for relief under section 6015 as an election under section 6015(b), (c), and (f), and determined that petitioner was not entitled to the requested relief.

If a taxpayer's request for relief under section 6015 is denied, the taxpayer may petition this Court (pursuant to section 6015(e)(1)) for a review of such determination. Our jurisdiction in cases brought under section 6015(e)(1) encompasses a review of respondent's determination with respect to all relief afforded by section 6015. Ewing v. Commissioner, 118 T.C. 494, 497-507 (2002); Fernandez v. Commissioner, 114 T.C. 324, 330-331 (2000); Butler v. Commissioner, 114 T.C. 276, 289-290 (2000).

With regard to the case herein, petitioner seeks equitable relief under section 6015(f) and requests the refund of all amounts paid/applied toward the unpaid tax reported on the 1989 joint return. To prevail, petitioner first must prove that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion. Jonson v. Commissioner, 118 T.C. 106, 125 (2002); Cheshire v. Commissioner, 115 T.C. 183, 198

(2000), affd. 282 F.3d 326 (5th Cir. 2002); <u>Butler v. Commissioner</u>,

<u>supra</u>.

A.   <u>Whether Petitioner Is Entitled to Equitable Relief</u>

Section 6015(f) provides:

SEC.  6015(f).  Equitable  Relief.--Under  procedures
prescribed by the Secretary, if--

> (1) taking into account all the facts and
> circumstances, it is inequitable to hold the
> individual liable for any unpaid tax or any
> deficiency (or any portion of either); and

> (2) relief is not available to such
> individual under subsection (b) or (c),

the Secretary may relieve such individual of such
liability.

Section 6015(b) provides a spouse relief from joint liability

for an "understatement" (as defined in section 6662(d)(2)(A)) of

tax attributable to erroneous items of the other spouse.[5]  With

regard to the case herein, petitioner does not seek relief from an

understatement of tax but rather from that portion shown on the

1989 joint return that was not paid when the return was filed.

Because there is no understatement of tax for 1989, relief is not

available to petitioner under section 6015(b).

Section 6015(c) provides relief from joint liability for

spouses who filed a joint return if they are no longer married, are

---

[5]    Sec.  6662(d)(2)(A) defines an understatement as the
excess of the amount of tax required to be shown on the return over
the tax imposed which is shown on the return, reduced by any
rebate.

legally separated, or have lived apart for a 12-month period. Such spouses may elect to be treated, for purposes of determining tax liability, as if separate returns had been filed. Section 6015(c)(1) provides proportionate relief for any "deficiency which is assessed with respect to the return". Relief is not available under section 6015(c) with respect to an unpaid liability for tax reported on the return. As noted, in this case, petitioner is seeking relief of the amount reflected as the balance due on the 1989 joint return. Because there is no "deficiency" for 1989, relief is not available to petitioner under section 6015(c). Consequently, the only avenue for relief available to petitioner is section 6015(f).

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2000-15, 2000-1 C.B. 447, 448, that the Commissioner will consider in determining whether an individual qualifies for relief under section 6015(f). Section 4.01 of Rev. Proc. 2000-15, 2000-1 C.B. at 448, lists seven conditions (threshold conditions) which must be satisfied before the Commissioner will consider a request for relief under section 6015(f). Respondent agrees that in this case those threshold conditions are satisfied.

Section 4.03 of Rev. Proc. 2000-15, 2000-1 C.B. at 448-449, lists factors that the Commissioner will consider in deciding whether to grant equitable relief under section 6015(f). Section

4.03(1) of Rev. Proc. 2000-15, 2000-1 C.B. at 448-449, lists the following six factors that the Commissioner will consider as weighing in favor of granting relief for an unpaid liability: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse would suffer economic hardship if relief is denied; (3) the requesting spouse was abused by the nonrequesting spouse; (4) the requesting spouse did not know or have reason to know that the reported liability would be unpaid at the time the return was signed; (5) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability; and (6) the unpaid liability is attributable to the nonrequesting spouse. Section 4.03(2) of Rev. Proc. 2000-15, 2000-1 C.B. at 449, lists the following six factors that the Secretary will consider as weighing against granting relief for an unpaid liability: (1) The unpaid liability is attributable to the requesting spouse; (2) the requesting spouse knew or had reason to know that the reported liability would be unpaid at the time the return was signed; (3) the requesting spouse significantly benefited (beyond normal support) from the unpaid liability; (4) the requesting spouse will not suffer economic hardship if relief is denied; (5) the requesting spouse has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates; and (6) the requesting spouse

has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability. In addition, Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449, states: "No single factor will be determinative of whether equitable relief will or will not be granted in any particular case. Rather, all factors will be considered and weighed appropriately." Furthermore, the list of aforementioned factors is not intended to be exhaustive.

In deciding whether respondent's determination that petitioner is not entitled to relief under section 6015(f) was an abuse of discretion, we consider evidence relating to all the facts and circumstances.

With regard to the case herein, respondent acknowledges that the following two factors weigh in favor of granting relief to petitioner: Petitioner is divorced, and the liability for which relief is sought is attributable to petitioner's former husband.

Respondent contends: (1) Petitioner knew or had reason to know that her 1989 income tax was not paid at the time the return was filed; (2) petitioner was not abused by her former husband; (3) petitioner's former husband did not have a legal obligation under the divorce decree to pay the unpaid 1989 tax liability; and (4) petitioner would not experience an economic hardship if she is not relieved from the liability. Respondent asserts that these factors weigh against granting relief to petitioner. We disagree with

respondent's contentions.  We now address each of these factors separately.

1.  <u>Requesting Spouse's Legal Obligation Factor</u>

Petitioner's divorce decree does not place the legal obligation to pay the unpaid 1989 tax liability on either petitioner or her former husband.  Respondent contends that the fact that Mr. Washington does not have a legal obligation under the divorce decree to pay the unpaid 1989 tax liability weighs against granting relief to petitioner.  Respondent's contention is flawed. Section 4.03(1)(e) of Rev. Proc. 2000-15, 2000-1 C.B. at 449, indicates that if Mr. Washington had a legal obligation under the divorce decree to pay the 1989 tax liability, then that fact would weigh in favor of granting relief to petitioner; likewise, if the divorce decree had placed the obligation to pay the tax on petitioner, then that fact would weigh against granting relief to petitioner as indicated in section 4.03(2)(f) of Rev. Proc. 2000-15, 2000-1 C.B. at 449.  But here, the divorce decree did not establish whose (petitioner's or Mr. Washington's) obligation it was to pay the unpaid 1989 tax liability.  Therefore, this is a neutral factor.

2.  <u>Abuse Factor</u>

Petitioner does not assert that she was abused by Mr. Washington or otherwise coerced into executing the 1989 joint return.  However, in response to questioning by respondent's

counsel at trial, petitioner testified that she had lodged a complaint with the police with respect to her former husband's treatment of her. Respondent contends that the fact that petitioner has proffered no evidence that her former husband threatened, forced, or coerced petitioner into executing the 1989 joint return weighs against granting relief to petitioner. We disagree. Lack of spousal abuse is not a factor listed in section 4.03(2) of Rev. Proc. 2000-15, 2000-1 C.B. at 449, that weighs against granting equitable relief. Therefore, this factor is neutral.

### 3. Economic Hardship Factor

Respondent contends that petitioner offered no evidence to show that she would suffer an economic hardship if relief were denied. Respondent asserts that pursuant to section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.,[6] an economic hardship exists if satisfaction of a levy will cause a taxpayer to be unable to pay his/her reasonable basic living expenses. Respondent maintains that respondent's collection activity did not leave petitioner unable to pay her basic living expenses. In addition, respondent

---

[6] Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., provides factors that will be considered in determining whether satisfaction of the levy will cause an individual taxpayer economic hardship because she will be unable to pay her reasonable living expenses. These factors include the taxpayer's age, her employment status and history, her ability to earn, the number of dependents, any extraordinary circumstances, and any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

asserts that petitioner provided no documentation to demonstrate an economic hardship.   We disagree.

Petitioner received no assets upon the dissolution of her marriage.  She does not own a house, does not take any vacations, and although she possesses an automobile, she does not own it.  The IRS lien for the tax liability harms petitioner's credit rating and limits her ability to obtain a loan.

Petitioner receives no spousal or child support from her former husband.  To the contrary, she is the sole provider for her two children.  Petitioner's wages are her only source of income and provide a near poverty level existence for her and her two children.[7]  Respondent's levy against petitioner's wages, had it not been released, would have resulted in her receiving approximately $240 biweekly to support herself and her two children.  A monthly income of $480 is substantially below the poverty level for a family of three and is insufficient to pay rent and other basic living expenses for petitioner and her two children.

Based on the record before us and petitioner's credible testimony, we are persuaded that petitioner will suffer great economic hardship if she is not relieved of the liability.

---

[7]    The 2002 Poverty Guidelines for the 48 Contiguous States and the District of Columbia for a family of three is $15,020. U.S. Dept. of Health and Human Services, The 2002 HHS Poverty Guidelines, 67 Fed. Reg. 6931 (Feb. 14, 2002).

4. <u>Knowledge or Reason To Know Factor</u>

In the case of a liability that was reported but not paid, the fact that the requesting spouse did not know and had no reason to know that the liability would not be paid is a factor weighing in favor of granting relief. Rev. Proc. 2000-15, sec. 4.03(1)(d), 2000-1 C.B. at 449. By contrast, the fact that the requesting spouse knew or had reason to know that the reported liability would be unpaid is a strong factor weighing against relief. Rev. Proc. 2000-15, sec. 4.03(2)(b), 2000-1 C.B. at 449. Respondent contends that petitioner did not prove that she did not know or did not have reason to know that the unpaid 1989 tax liability would not be paid at the time the return was filed. We disagree.

Petitioner filed a joint return for 1989 with her former husband upon the advice of the tax return preparer. She was under the impression that she was required to file a joint return because she was married at the time. Petitioner provided her Form W-2 to the tax return preparer. The tax return preparer provided her the 1989 joint tax return for signature, and she signed the return. No discussions took place between petitioner and Mr. Washington about the preparation and subsequent filing of the 1989 joint return or about the payment of any tax owed. Petitioner credibly testified that she believed Mr. Washington would pay the tax owed since it resulted from his business operations.

During petitioner's marriage to Mr. Washington, petitioner paid the tax on her wages through withholding, and Mr. Washington paid the taxes attributable to his business. Mr. Washington controlled all aspects of his business, and he conducted his business affairs without any assistance or involvement from petitioner. The record and petitioner's credible testimony demonstrate that petitioner had no knowledge of, or involvement in, her former husband's business. (We found petitioner to be credible after having observed her appearance and demeanor at trial.) We conclude that petitioner had no knowledge or reason to know at the time the returns were signed that the reported liability would not be paid by Mr. Washington.

Assuming arguendo that petitioner had reason to know that the reported 1989 tax liability would not be paid, other factors in favor of granting petitioner equitable relief are unusually strong in this case. And "when the factors in favor of equitable relief are unusually strong, it may be appropriate to grant relief under section 6015(f) in limited situations where the requesting spouse knew or had reason to know that the liability would not be paid". Rev. Proc. 2000-15, sec. 4.03(2)(b), 2000-1 C.B. at 449. Thus, even if petitioner knew or had reason to know that the reported liability would not be paid, on the basis of all the facts and circumstances of this case, we find that compelling reasons existed for respondent to grant petitioner equitable relief.

5.  Significant Benefit and Noncompliance

Respondent did not address the significant benefit factor and the noncompliance with Federal law factor. We, however, shall do so, and after due consideration, we find that neither of these factors weighs against granting relief to petitioner.

Petitioner did not significantly benefit, either during or after the marriage, from the unpaid 1989 tax liability. During the marriage, petitioner did not receive expensive jewelry, drive a luxurious car, wear designer clothes, take expensive vacations, or even own a home. Petitioner received no assets from the dissolution of the marriage. Moreover, since the divorce, she has received no spousal or child support. Petitioner rents a small house, drives an automobile that she does not own, and does not take vacations.

With respect to compliance with Federal tax laws, petitioner has always filed timely Federal income tax returns. Petitioner is not late or in arrears on any of her separate tax obligations. Indeed, petitioner has overpaid her taxes each year since 1994, and it is these overpayments for which petitioner seeks a refund because they were applied to the unpaid 1989 tax liability.

6.  Conclusion

No factors weigh against granting relief to petitioner. To the contrary, all factors either weigh in favor of granting relief to petitioner or are neutral. Consequently, taking into account

all the facts and circumstances, we conclude that (1) respondent's denial of relief under section 6015(f) was an abuse of discretion, and (2) that it would be inequitable to hold petitioner liable for the unpaid 1989 tax liability. See <u>Ferrarese v. Commissioner</u>, T.C. Memo. 2002-249; <u>August v. Commissioner</u>, T.C. Memo. 2002-201; <u>Foley v. Commissioner</u>, T.C. Memo. 1995-16; <u>Klimenko v. Commissioner</u>, T.C. Memo. 1993-340; <u>Hillman v. Commissioner</u>, T.C. Memo. 1993-151.[8]

B.  <u>Whether Petitioner Is Entitled to Refunds for Amounts Paid on or Before July 22, 1998</u>

Since we have concluded that it would be inequitable to hold petitioner liable for the unpaid 1989 tax liability, we now must decide whether petitioner is entitled to the refund of amounts paid on/applied to the unpaid 1989 tax liability.

---

[8]    Cases deciding whether a taxpayer was entitled to equitable relief under sec. 6013(e)(1)(D) are helpful in deciding whether a taxpayer is entitled to relief under sec. 6015(f). <u>Mitchell v. Commissioner</u>, 292 F.3d 800, 806 (D.C. Cir. 2002) ("Subsection (f) has no statutory antecedent as a stand alone provision, but has roots in the equity test of former subparagraph 6015(b)(1)(D) carried forward into subparagraph 6015(b)(1)(D)."), affg. T.C. Memo. 2002-332.  In <u>Cheshire v. Commissioner</u>, 282 F.3d 326, 338 n.29 (5th Cir. 2002), affg. 115 T.C. 183 (2000), the U.S. Court of Appeals for the Fifth Circuit stated:

Because the wording of § 6015(f)(1) is virtually identical to that of former § 6013(e)(1)(D), case law construing former § 6013(e)(1)(D) is helpful in determining whether the Commissioner abused his discretion in denying equitable relief to Appellant under current § 6015(f)(1).  See <u>Butler v. Commissioner</u>, 114 T.C. at 291 (applying the § 6013(e)(1)(D) standard to a § 6015(f) inquiry because 'the language of sec. 6015(f)(1) does not differ significantly from the language of former sec. 6013(e)(1)(D)').

1.  Positions of the Parties

Petitioner contends that she is entitled to a refund of all amounts paid/applied on the unpaid 1989 tax liability including those made on or before July 22, 1998, the date section 6015 was enacted. Payments made/or applied on or before July 22, 1998, include petitioner's overpayments of tax for the years 1992 and 1994-97 in the following amounts: $694.30 for 1992 (applied April 15, 1993), $991.78 for 1994 (applied April 15, 1995), $1,030 for 1995 (applied March 18, 1996), $523 for 1996 (applied March 10, 1997), and $535 for 1997 (applied March 30, 1998). In addition, petitioner contends that she is entitled to a refund of her levied wages of over $800 (petitioner asserts that $408.95 was taken on two separate occasions--in June of 1998 and March of 1999), a refund of overpayments from her 1998-2000 tax returns ($2,001 for 1998, $1,322 for 1999, and $1,254 for 2000), and a $500 rebate in 2001.

Respondent concedes that if we find that petitioner qualifies for relief under section 6015(f), she is entitled to a refund of the $2,001 overpayment of her 1998 taxes that was applied to the unpaid 1989 tax liability. Respondent asserts, however, that petitioner is not entitled to a refund of any additional amounts because they were either paid/applied on or before July 22, 1998, or they were not applied to the 1989 tax liability.

2.  The Statute

Section 6015(g) governs the allowance of credits and refunds in cases where a taxpayer is granted relief under section 6015. That section provides:

SEC. 6015(g). Credits and Refunds.--

(1)  In general.--Except as provided in paragraphs (2) and (3), notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section.

(2)  Res judicata.--In the case of any election under subsection (b) or (c), if a decision of a court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except with respect to the qualification of the individual for relief which was not an issue in such proceeding.  The exception contained in the preceding sentence shall not apply if the court determines that the individual participated meaningfully in such prior proceeding.

(3)  Credit and refund not allowed under subsection (c).--No credit or refund shall be allowed as a result of an election under subsection (c).

The exception in section 6015(g)(2) does not apply because there have been no prior proceedings related to petitioner's 1989 tax year.  Nor does the exception in section 6015(g)(3) apply because we have found that petitioner is entitled to relief under section 6015(f), not under section 6015(c).  Thus, any refund available to petitioner is (1) limited to the extent attributable to the application of section 6015, and (2) subject to any limitation imposed by section 6511, 6512(b), 7121, or 7122.

a. <u>Refund to the Extent Attributable to the Application of Section 6015</u>

In general, section 6015(g)(1) allows a credit or refund "to the extent attributable to the application of this section." Section 6015 applies "to any liability for tax arising after the date of the enactment of this Act [July 22, 1998] and any liability for tax arising on or before such date but remaining unpaid as of such date." RRA 1998, sec. 3201(g), 112 Stat. 740.[9] Respondent interprets the term "remaining unpaid" so as to limit the benefits of section 6015 in this case to the portion of the 1989 tax liability that remained uncollected as of July 22, 1998, the date of enactment of section 6015. We disagree with respondent's interpretation.

While the issue involved herein is one of first impression in this Court, we are mindful that it has been addressed by the United States Court of Federal Claims in <u>Flores v. United States</u>, 51 Fed. Cl. 49 (2001). In <u>Flores</u>, the court granted relief under section 6015(f) with respect to the taxpayer's entire tax liability, including the portion of the tax liability that was paid on or before July 22, 1998.

---

[9] On July 17, 2002, respondent adopted regulations under sec. 6015 that support respondent's position. See sec. 1.6015-8, Income Tax Regs. The regulations, however, are applicable for all elections or requests for relief filed on or after July 18, 2002. Sec. 1.6015-9, Income Tax Regs. Thus, the regulations do not apply to petitioner's request for relief, which was filed before that date.

We agree with the analysis of the Court of Federal Claims in Flores.  We shall not engage in a detailed discussion of that analysis.  Rather, we confine ourselves to a summary of our conclusions as to respondent's arguments with some augmentation of the analysis of the Court of Federal Claims.

Specifically at issue in this case, as well as in Flores, is whether a tax liability "remaining unpaid" as of the date of enactment of section 6015 (i.e., July 22, 1998), refers to (1) the entire amount of the tax liability for the year if any portion thereof has not been collected by July 22, 1998, or (2) only that portion of the tax liability that has not been collected by July 22, 1998.

Respondent asserts that Flores v. United States, supra, was wrongly decided because its holding renders the word "remaining" excessive, thereby violating "'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'."  TRW, Inc. v Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 167 (2001)).  Respondent asserts that the use of the word "remaining" preceding "unpaid" implies that part [or all] of the liability has not been paid and remains to be paid.  This implication merely reflects that the liability in question has not been paid in full.  In this regard, we have held that a taxpayer is

not entitled to relief under section 6015 if the liability was paid in full on or before July 22, 1998.  Miller v. Commissioner, 115 T.C. 582, 587 (2000), affd. 21 Fed. Appx. 160 (4th Cir. 2001); Brown v. Commissioner, T.C. Memo. 2002-187.

For the reasons set forth below, we do not agree with respondent's position that only the portion of tax remaining uncollected on July 22, 1998, is subject to the provisions of section 6015(f).

In interpreting a statute, courts are guided by principles of statutory construction, including the following:  (1) Unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, and common meaning; and (2) unless the statute otherwise dictates, where Congress uses terms that have acquired a settled meaning under the common law, a court must infer that Congress means to incorporate the established meaning of the terms.  Moreover, we are mindful that section 6015 was designed "to correct perceived deficiencies and inequities", and it is well settled law that "curative legislation should be liberally construed to effectuate its remedial purpose."  Flores v. United States, supra at 53.

The precise definition of the word "remain" varies somewhat depending on its context.  According to Webster's Third New International Dictionary (1993), the word "remain", as a verb, can mean "to be a part not destroyed, taken away, or used up : be still

extant, present, or available : be left when the rest is gone".
The word "remain" can also mean "to be something yet to be shown,
done, or treated". Remain also can mean "to stay in the same place
or with the same person or group". Finally, remain can mean "to
continue unchanged in form, condition, status, or quantity",
"continue to be", or "stand".

Respondent asserts that the word "remaining" is used
throughout the Internal Revenue Code "almost exclusively" to mean
that portion which is left over from the whole. We agree that the
word "remaining" <u>often</u> refers to what is left; i.e., the remaining
amount; e.g., sections 72(s)(1)(A), 74(c)(2), 170(l), 172(f)(5),
401(a)(9)(B)(i)(II), 414(k)(2), 671, 864(f)(1)(C), and 865(c)(1)(B)
refer to "the remaining portion",[10] and sections 169(a) and 194(a)

---

[10]    See also, sec. 25(a)(1)(B) ("the remaining principal");
sec. 6861(f) ("any remaining portion"); sec. 451(h)(2)(A) ("a
qualified prize (or remaining portion thereof)"); sec. 148(f)(3)
("the remaining balance"); sec. 6340(c)(3) ("the remaining balance
of such liability"); sec. 263A(d)(2)(B)(ii) ("any part of the
remaining equity interest"); sec. 408A(d)(3)(E)(ii) ("all remaining
amounts""); sec. 904(f)(3)(A)(i) ("the remaining amount"); sec.
996(a)(2) ("the remaining 1/17th of such amount"); sec. 565(f)(1)
("all the remaining earnings and profits");  section 732(c)(1)(B)
("to the extent of any basis remaining after the allocation", "such
remaining basis"); sec. 1250(d)(4)(D)(ii) ("the remaining gain not
recognized on the transaction"); sec. 4254(a)(2) ("the remaining
items not included in any such group"); sec. 1082(a)(2)(G) ("all
other remaining property"); sec. 1250(f)(3)(C) ("the remaining
property"); sec. 1272(a)(6)(A)(i) ("all remaining payments"); sec.
4943(c)(1) ("the remaining holdings"); sec. 7507(c)(3) ("to the
extent of the remaining assets"); secs. 47(c)(2)(B)(vi),
147(f)(2)(E) ("the remaining term"); sec. 42(j)(6)(B) ("the
remaining compliance period"); sec. 412(b)(4) ("the remaining
amortization period"); sec. 192(c)(1)(B)(i) ("the average remaining
(continued...)

refer to "the number of months * * * remaining in the period".[11]

_____

[10](...continued)
working life"); sec. 418B(d)(3)(C)(ii) ("the average of the remaining expected lives"); sec. 404(a)(1)(A)(ii) ("the remaining future service"); sec. 447(f)(3),(i)(5)(C) ("the remaining taxable years"); sec. 7702A(c)(3)(B)(ii) ("the remaining period"); secs. 1274(d)(1)(C)(i), 9501(c)(3), 9507(d)(3)(C), 9509(d)(3)(C) ("remaining periods to maturity"); sec. 542(d)(1)(B) ("the remaining maturity"); sec. 4980(d)(5)(C) ("the remaining participants"); sec. 5123(d)(3) ("remaining partners"); sec. 7444(d) ("the remaining judges"); sec. 7448(h) ("any remaining dependent child or children"); sec. 8002(c)(12) ("the remaining members"); sec. 7702B(d)(3)(B) ("any remaining limitation").

[11]     See, e.g., sec. 667(b)(1)(C) ("each of the 3 taxable years remaining after the application of subparagraph (B)"); sec. 667(d)(1)(D) ("any of the three taxable years remaining after application of subsection (b)(1)(B)"); sec. 178(a)(b) ("the period of the term of the lease remaining on the date of its acquisition"); sec. 401(h)(5) ("any amount remaining in such separate account"); sec. 832(e)(5)(A) ("the amount (if any) remaining which was added to the account", "any amounts remaining in such reserve", "the entire amount remaining in such account"); sec. 847(6)(A) ("the entire amount remaining in such special loss discount account"); sec. 6342(a)(2),(3) ("the amount remaining after applying paragraph (1)", "The amount, if any, remaining after applying paragraphs (1) and (2)"); sec. 7652(b)(3)(B) ("Any amounts remaining"); section 732(c)(1)(B) ("to the extent of any basis remaining after the allocation"); sec. 7518(f)(4) ("Any amount of a withdrawal remaining after the application of the preceding sentence"); sec. 404(a)(3)(B) ("total current and accumulated earnings or profits remaining after adjustment for its contribution deductible"); sec. 414(l)(2)(D)(iii) ("any other plan remaining after the spin-off"); sec. 469(f)(1)(C) ("deduction or credit remaining after the application of subparagraphs (A) and (B)"); sec. 847(6)(B) ("any special estimated tax payment remaining after the credit"); sec. 593(c)(2) ("treated as remaining in such reserve"); sec. 7518(g)(5)(C) ("treated as remaining in a capital construction fund at the close of any taxable year"); sec. 1368(c)(3) ("Treatment of remainder.--Any portion of the distribution remaining after the application of paragraph (2)"); sec. 2056A(b)(1)(B), (10)(A), ("property remaining in a qualified domestic trust on the date of the death"); sec. 5143(d)(4) ("the partner or partners remaining after death or withdrawal of a member"); sec. 6342(b) ("Any surplus proceeds remaining after the
(continued...)

There are other sections, however, where the word "remaining" is used in a different context as a copula[12] or linking verb. When used as a copula the word "remaining" links the word that precedes it to the word that follows it;[13] e.g., the income remaining undistributed. In those sections, the word "remaining" means that the preceding word "continues to be unchanged" in the "form, condition, or status" described by the word that follows. We believe that within the context of the effective date provisions of section 6015 a tax liability "remaining unpaid" on or after July 22, 1998, means that the liability continues to be unpaid after July 22, 1998.

The applicability of section 6015 to the issue before us thus turns on the meaning of the word "unpaid". The primary definition

---

[11](...continued) application of subsection (a)"); sec. 7608(c)(3) ("such proceeds or the balance of such proceeds remaining at the time"); sec. 9008(f) ("moneys remaining in the account * * * moneys so remaining"); sec. 9038(b)(3) ("that portion of any unexpended balance remaining in the candidate's accounts").

[12] Copulas are verbs that link a predicate (adjective, noun, etc.) to the subject. I Curme, A Grammar of the English Language, par. 12.3, 66 (1986). Copulas often indicate a state, continuance in a state, or entrance into a state. Id. par. 12.3, 68. The verb "remain" is among the most common copulas and indicates a continuance in a state. II Curme, A Grammar of the English Language, par. 6.B, 27-28.

[13] See, e.g., sec. 411(b)(1)(A) ("benefits * * * shall be treated as remaining constant"); sec. 9704(i)(1)(B) ("the expenses accrued (and remaining unpaid)"); sec. 4942(a) ("the amount of such income remaining undistributed at the beginning of such second (or succeeding) taxable year"); sec. 7448(j)(3) ("Any accrued annuity remaining unpaid").

of "unpaid" is "not paid". Webster's Third New International Dictionary (1993). The word "paid" is a form of the word "pay", which "is a general term, usually lacking particular connotation". Id. The word "paid" can mean "gave a recompense", "made payment", or "discharged an obligation"; it can be synonymous with "compensated", "remunerated", "satisfied", "reimbursed", "indemnified", "recompensed", or "repaid". Id.

We believe that, when used to describe the continuing state of a liability for tax in the provision under consideration, the word "paid" means "satisfied" and that the word "unpaid" means "not satisfied". Id. A liability for tax "remaining unpaid as of the effective date" is a liability for tax that continues to be unsatisfied as of the applicable date. A liability is not satisfied until it is paid in full, id.; ergo, a liability remains unsatisfied or unpaid until it is paid in full.

Other provisions of section 6015 indicate that Congress intended the expanded relief provided by section 6015 to apply retroactively to the entire preexisting liability, rather than to the portion of a preexisting liability that had been uncollected as of the date of enactment. Flores v. United States, 51 Fed Cl. at 54. For example, section 6015(b) provides that if a spouse elects and qualifies for relief under that section, then the spouse "shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such

liability is attributable to such understatement." (Emphasis supplied.) That language clearly relieves the spouse of all liability for the taxable year attributable to the understatement; it suggests that Congress intended that the provision "should apply to the entire taxable year and the entire tax liabilities associated therewith". <u>Flores v. United States</u>, <u>supra</u> at 55.

Further, there is solid precedent in decisions that treat an income "tax liability for a particular year as being unitary and 'paid' only when fully collected." <u>Id.</u>; see, e.g., <u>Union Trust Co. v. United States</u>, 70 F.2d 629, 630 (2d Cir. 1934) ("the entire tax liability is unitary and not discharged until paid in full"); see also <u>Flora v. United States</u>, 362 U.S. 145 (1960) (income tax is imposed on a unitary basis that precludes suits based on partial payment). We see no reason why RRA 1998, section 3201(g), should not be similarly interpreted, "particularly in light of * * * [the] court's obligation to construe liberally the innocent spouse amendments as curative legislation." <u>Flores v. United States</u>, <u>supra</u> at 56.

Further, we note that section 6015(f) provides that if "it is inequitable to hold the individual liable for any <u>unpaid tax</u> * * * the Secretary may relieve such individual of such liability." The legislative history indicates that "unpaid tax" referred to in section 6015(f) does not refer to the amount that is not paid when

relief is requested; rather it refers to a tax reported on the return, but not paid with the return.

The Senate amendment would have permitted the separate liability election (section 6015(c)) to apply "in situations where the tax shown on a joint return is not paid with the return." S. Rept. 105-174, 58 (1998), 1998-3 C.B. 537, 594. The conference committee report, H. Conf. Rept. 105-599, 1998-3 C.B. 747, explained that, although the conference agreement did not include that portion of the Senate amendment, the conferees intended that the Secretary consider using the grant of authority to provide equitable relief (section 6015(f)) to avoid the inequitable treatment of spouses in situations where tax was shown on the joint return, but not paid with the return. Thus, it is clear from the legislative history that the term "unpaid tax" in section 6015(f) includes a tax that was shown on a joint return, but not paid with the return.

Section 6015(g) permits a refund where relief from liability for unpaid tax is granted under section 6015(f). If the word "unpaid" has the meaning urged by respondent, then a taxpayer seeking equitable relief under section 6015(f) for an unpaid tax could obtain relief only for that portion of the tax that has not been collected and would not be permitted any refund of tax. Such an interpretation would conflict with the legislative history. Furthermore, section 6015(g) is very specific with respect to the

limitations placed on a refund; section 6015(g) specifically provides that no refunds can be made with respect to relief granted under section 6015(c). There is no such restriction for relief for an unpaid tax granted under section 6015(f).

Respondent contends that the court's holding in Flores v. United States, supra, leads to a result that Congress did not intend. Respondent notes that a taxpayer who paid the entire liability would not be entitled to relief. Respondent asserts that only under a "strained interpretation" could Congress have intended this result. Therefore, respondent contends, Congress's intent must have been to allow relief only with respect to amounts that remain uncollected after July 22, 1998. We disagree.

Congress obviously had to set a cutoff for claims for relief under section 6015; otherwise, claims for refunds could go back for decades. We believe that Congress wanted to grant the broadest relief, while providing for certainty in the settlement of tax refund claims. In setting the cutoff for claims for relief, Congress treated claims related to liabilities for taxes that were satisfied as of the date of enactment as settled as of that date. Section 6015 relief is available for all claims related to tax liabilities that were not settled as of July 22, 1998. Further, the disparity in the treatment of taxpayers who have paid the liability in full as of July 22, 1998, and those who have partially

paid is somewhat mitigated in that a refund available under section 6015(g)(1) may be limited by section 6511, 6512(b), 7121, or 7122.

b. <u>Limitations of Section 6511</u>

Respondent argues that should this Court follow the holding in <u>Flores v. United States</u>, <u>supra</u>, then petitioner's refund for amounts paid on the unpaid 1989 tax liability would be limited by sections 6015(g)(1) and 6511.

Section 6015(g)(1) provides, in pertinent part, that "notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section". Since we have held that section 6015 applies to the entire liability and that petitioner is entitled to relief with respect to the entire liability, the only limitations on the refund are those set forth in sections 6511, 6512(b), 7121, and 7122. The only limitation applicable in this case is section 6511.[14] As relevant to this case, section 6511 requires that a claim for credit or refund of an overpayment of any tax in respect of which the taxpayer is required to file a return must be filed within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later.

---

[14] Sec. 6512(b) limits the amount of a refund in a deficiency proceeding. Sec. 7121 applies to cases involving closing agreements, and sec. 7122 applies to cases involving compromises.

A claim for a tax refund (1) must inform the IRS that a claim for a tax refund is being asserted, (2) detail each claimed ground for the refund, and (3) provide sufficient facts so that the IRS can adequately examine the merits of the claim. See Chicago Milwaukee Corp. v. United States, 40 F.3d 373, 375 (Fed. Cir. 1994); Evans v. United States, 618 F. Supp. 621, 622-623 (E.D. Pa. 1985), affd. sub nom. Colonial Tire Serv. of West Chester, Inc. v. United States, 787 F.2d 581 (3d Cir. 1986); sec. 301.6402-2(b)(1), Proced. & Admin. Regs.[15]  This includes refund claims that are submitted in Federal income tax returns in accordance with section 301.6401-3(a)(5), Proced. & Admin. Regs.  See, e.g., Hefti v. IRS, 8 F.3d 1169, 1173 (7th Cir. 1993) (amended tax return lacked statement of necessary factual basis for refund as required under sec. 301.6402-2(b)(1), Proced. & Admin. Regs.); Levitsky v. United States, 27 Fed. Cl. 235, 240 (1992).

---

[15]  Sec. 301.6402-2(b)(1), Proced. & Admin. Regs, provides:

No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period.  The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.  The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury.  A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

In this case, the basis of petitioner's claim for a refund of amounts applied to the unpaid 1989 tax liability is petitioner's claim for relief under section 6015(f). Petitioner's 1992 and 1994-97 tax returns (which were timely filed on or before April 15, 1998) could not have adequately notified the IRS of the basis of petitioner's claim for a refund, because the returns were filed before section 6015 was enacted on July 22, 1998. Further, since petitioner did not submit her 1998 tax return to the Court, we cannot discern whether that return adequately notified the IRS of her claim for relief under section 6015 for refund of the 1998 overpayment.

Respondent contends that petitioner's claim for relief under section 6015(f) was filed on June 29, 1999, when petitioner filed Form 8857. Since June 29, 1999, is more than 3 years after the filing of the joint 1989 return,[16] respondent further contends that petitioner's refund is limited to the amounts paid/applied within the 2-year period preceding petitioner's filing Form 8857. Respondent concludes, therefore, that petitioner's refund is limited to amounts paid/applied on or after June 29, 1997; i.e., petitioner is entitled to a refund only for payments of $535 and $2001 made after June 29, 1997. We disagree with respondent's contention that petitioner filed her claim for relief on June 29,

---

[16] The joint 1989 return was filed Apr. 15, 1990; 3 years after that date is Apr. 15, 1993.

1999; we believe such refund claim was filed earlier than that date.

In a letter to Revenue Officer Whalen, dated July 15, 1998, petitioner pleaded financial hardship and asked whether anything could be done to place her account on an "uncollectible status". Moreover, she requested that the penalties and interest assessed against her be abated, reiterating that the taxes were attributable to her former husband's business. Another letter to Revenue Officer Whalen, dated March 13, 1999, referenced earlier meetings, indicating that petitioner's discussions with Revenue Officer Whalen were ongoing. In that letter, petitioner stated that garnishment of her wages would cause her a serious financial hardship and asked to be relieved of the 1989 tax liability. She specifically stated: "I have filed my taxes faithfully every year only to have my taxes taken for something I was not responsible for." On June 29, 1999, petitioner filed Form 8857 in which she sought relief from joint liability for the years 1995-98. Petitioner requested tax refunds with interest for each of the years 1995-98 in a letter she attached to the Form 8857.

We are satisfied that petitioner's letters of July 15, 1998, and March 13, 1999, constitute a request for relief within the purview of section 6015. The ongoing nature of petitioner's request, and the proximity of the July 15, 1998, letter to the July 22, 1998, enactment date of section 6015, lead us to conclude that

petitioner requested relief as of the date of enactment of section 6015 (i.e., July 22, 1998). The Form 8857 sent by the IRS to petitioner was the result of petitioner's prior written and oral requests for relief from liability for the 1989 tax liability. Further, since refunds are included in the relief provided under section 6015, we believe that a request for relief under section 6015 encompasses a request for a refund of tax to the extent permitted under section 6015. We find, therefore, that petitioner requested a refund of amounts paid/applied on the unpaid 1989 tax liability as of July 22, 1998. Consequently, petitioner is entitled to all amounts paid/applied on or after July 22, 1996.

The IRS credited petitioner's 1992 and 1994-98 overpayments against the 1989 tax liability as follows: $694.30 for 1992 (applied April 15, 1993), $991.78 for 1994 (applied April 15, 1995), $1,030 for 1995 (applied March 18, 1996), $523 for 1996 (applied March 10, 1997), $535 for 1997 (applied March 30, 1998), and $2,001 for 1998 (applied April 15, 1999). As a result, claims for refund for the 1992 and 1994-98 overpayments would have to have been filed by the following dates:

| Taxable Year of Overpayment | Date Applied to 1989 Liability | Last Date for Filing Refund |
|---|---|---|
| 1992 | Apr. 15, 1993 | Apr. 15, 1995 |
| 1994 | Apr. 15, 1995 | Apr. 15, 1997 |
| 1995 | Mar. 30, 1996 | Mar. 30, 1998 |
| 1996 | Mar. 10, 1997 | Mar. 10, 1999 |
| 1997 | Mar. 30, 1998 | Mar. 30, 2000 |
| 1998 | Apr. 15, 1999 | Apr. 15, 2001 |

To conclude, we hold that petitioner is entitled to a refund of her 1996-98 overpayments. In addition, she is entitled to a $408.95 refund of wages garnished on June 16, 1998.

A final note. In her brief, petitioner indicates that wages of $408.95 garnished in March 1999, overpayments from her 1999 and 2000 tax returns ($1,322 for 1999 and $1,254 for 2000), and a $500 rebate from 2001 were applied to her 1991 tax liability. Since neither petitioner's 1991 tax liability nor any of those payments were mentioned in petitioner's request for relief under section 6015(f), they are not now properly before us.[17]

To reflect the foregoing,

Decision will be

entered under Rule 155.

---

[17] Petitioner must file a separate request for relief with respect to the 1991 tax liability.