T.C. Summary Opinion 2004-9

UNITED STATES TAX COURT

MARY K. MALONE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18842-02S.                    Filed February 3, 2004.

Mary K. Malone, pro se.

<u>Steven W. LaBounty</u>, for respondent.

COHEN, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time that the petition was filed.  The decision to be
entered is not reviewable by any other Court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
all section references are to the Internal Revenue Code in effect
for the year in issue.

This case was commenced in response to a final notice denying petitioner's request for relief under section 6015(f) with respect to unpaid taxes on a joint return filed by petitioner and her former spouse for 1998.

## Background

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.

Petitioner and Mark D. Malone (Malone) were married on August 12, 1978. In February 1999, petitioner filed a petition seeking dissolution of her marriage to Malone. A Stipulation executed by petitioner and Malone in July 1999 included the following paragraph:

> (e) Tax Returns: Mark's attorney shall convey to Mary's attorney the 1998 joint income tax returns prepared by Vercamp & Malone, CPAs. Mary and her counsel shall promptly review said returns upon receipt of same and Mary shall execute said joint returns.

A Judgment & Decree of Dissolution of Marriage (the decree) was filed December 26, 2000, in the Circuit Court of Phelps County, Missouri. The decree included the following provision:

### 1998 TAX LIABILITY

> The Court finds that Petitioner had $2,418.00 intercepted from her 1999 tax refund to apply to joint taxes for 1998, of which Petitioner's income was approximately 5 percent of adjusted gross income. * * * [Malone] is ordered to pay back to Petitioner 95 percent of said amount, in the amount of $2,297.10 by December 1, 2000. If the parties receive a refund for tax year 1998, state and/or federal, then any refund shall be the sole and separate property of * * * [Malone].

On January 5, 2001, Malone reimbursed petitioner the sum of $2,297.10.

On or about August 22, 1999, petitioner and Malone filed a Form 1040, U.S. Individual Income Tax Return, for 1998. The Form 1040 reported various items of income, including $7,133.49 of wages paid to petitioner from Suncliff Greenhouse & Nursery. The return reported total tax of $35,888, payments of $30,393, and a balance of $6,696. The balance shown was not paid when the return was filed. After the return was processed, a penalty for failure to make estimated tax payments and a penalty for failure to pay the tax reported on the return were assessed. Subsequently, in addition to the setoff described in the decree, petitioner's overpayment of her 2000 income tax in the amount of $1,991 and a rebate of $300 due to petitioner in 2001 were setoff against the unpaid 1998 liability. The remaining unpaid balance of the 1998 liability, including interest and penalties, was paid by Malone after commencement of this case.

On or about July 21, 2001, petitioner executed a Form 8857, Request for Innocent Spouse Relief, with respect to the liability for 1998. In an attachment to the form, petitioner stated that she did not sign the 1998 income tax return. In a Form 886-A, Innocent Spouse Questionnaire, petitioner again asserted that she did not sign the 1998 return.

Petitioner's claim for relief was considered by a representative of the Internal Revenue Service. The

representative considered factors including marital status, economic hardship, and the amount of the liability attributable to petitioner and to Malone and weighed factors in favor of relief and factors against relief. The representative concluded that, despite her denial, petitioner did sign the return. Relief was denied on the ground that petitioner did not establish that she believed the taxes would be paid at the time that the return was filed.

In the petition in this case, petitioner alleged: "I did not sign the 1998 income tax return and did not see the return until divorce proceedings commenced. At that time, I was reluctantly provided a copy of the return. I should not be held responsible."

### Discussion

At the time of trial, petitioner testified that she did not recall signing the 1998 return. Malone and another witness testified that petitioner had signed the return, and comparisons of the signatures lead us to conclude that she in fact signed the return. If the return had not been a joint return, petitioner would not be entitled to relief under section 6015(f). Raymond v. Commissioner, 119 T.C. 191, 195-197 (2002). Thus, by the time of trial, petitioner was faced with a dilemma as to whether she did or did not contend that the return for 1998 was a joint return.

With respect to the relief that she requests, petitioner bears the burden of proof. Alt v. Commissioner, 119 T.C. 306, 311 (2002); Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). We review the determination to deny relief under section 6015(f) under an abuse of discretion standard. See Ewing v. Commissioner, 122 T.C. ___ (2004); Washington v. Commissioner, 120 T.C. 137, 146 (2003). Petitioner must show that respondent's action in denying relief was arbitrary, capricious, or without sound basis in fact. Jonson v. Commissioner, supra at 125.

As directed by section 6015(f), the Commissioner has prescribed procedures to determine whether a taxpayer qualifies for relief from joint and several liability under section 6015(f). These procedures are set forth in Rev. Proc. 2000-15, 2000-1 C.B. 447. The Court has upheld the use of these procedures in reviewing a negative determination. See Washington v. Commissioner, supra at 147; Jonson v. Commissioner, supra at 125.

Because of the dearth of evidence in the record on the conditions and circumstances specified in Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, we need not address all the factors that are listed there. It appears that the unpaid liability was not attributable or attributed by the examiner to petitioner. Although the decree specified Malone's obligation to reimburse petitioner with respect to the setoff of her 1999

overpayment against the 1998 joint liability, it was silent as to subsequent payments. The key consideration here, and the basis for the negative determination, is that petitioner has not shown that she did not know or have reason to know that the reported liability would be unpaid at the time that the return was signed. See <u>Feldman v. Commissioner</u>, T.C. Memo. 2003-201.

Unfortunately for petitioner, her denials that she had signed the 1998 return, her lack of recollection of signing the return, and the express terms of the July 1999 Stipulation and the December 2000 decree undermine her claim. The decree specifically refers to the application of petitioner's 1999 tax refund to the 1998 liability, which indicates that petitioner had actual or constructive knowledge that an unpaid liability existed. During her testimony, petitioner's only explanation of these circumstances was "I was not informed or advised."

Upon consideration of the entire record, we cannot conclude that there was an abuse of discretion in denying petitioner relief under section 6015(f).

<u>Decision will be entered</u>

<u>for respondent.</u>