T.C. Summary Opinion 2003-110

UNITED STATES TAX COURT

SARAH JOAN BARBER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11384-01S.               Filed August 6, 2003.

Sarah Joan Barber, pro se.

<u>Vicki L. Miller</u>, for respondent.

COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  The decision to be entered
is not reviewable by any other court, and this opinion should not
be cited as authority.

---

[1]     Unless otherwise indicated, subsequent section
references are to the Internal Revenue Code as amended.  Rule
references are to the Tax Court Rules of Practice and Procedure.

In the notice of determination, respondent denied petitioner relief from joint liability for her 1987 Federal income tax under section 6015(f).  The sole issue for decision is whether this denial was an abuse of respondent's discretion.

Some of the facts were stipulated.  Those facts, with the annexed exhibits, are so found and are made part hereof.  Petitioner's legal residence at the time the petition was filed was Kansas City, Missouri.

Petitioner married James Bradley Barber (Mr. Barber) in January 1983.  Mr. Barber testified at trial but did not intervene in the proceeding, nor did he object to petitioner's claim for relief.  Petitioner and Mr. Barber had one son, born in 1989.  They divorced in December 1998.

During the year at issue, petitioner was employed by American City Business Journals (ACBJ) in the human resources department.  In 1988, petitioner's employment with ACBJ was terminated when the company relocated its offices to North Carolina.  Thereafter, she was a homemaker and primary caretaker of her son but occasionally had jobs outside the home.  In 1987 and subsequent years, Mr. Barber was self-employed as a painter and paperhanger.

Petitioner and Mr. Barber experienced financial difficulties during their marriage, particularly after their son was born, and petitioner was no longer employed.  Their money was often spent,

as Mr. Barber described, "putting water on the biggest fire." They were often behind on their bills. Nevertheless, at the time of their divorce in 1998, petitioner and Mr. Barber had accumulated $8,015.19 in equity in their home. Both petitioner and Mr. Barber participated in managing the family's finances by discussing which bills were due, which would be paid, which would wait, and what their spending limits were.

Petitioner described her marriage to Mr. Barber as an abusive relationship. Police were called to the couple's residence during arguments in 1994 and 1995. However, petitioner never filed any charges on these incidents. Petitioner was not allowed to have her own checking account, but, as described later, she had access to a checking account. Petitioner also stated that, toward the end of their marriage, she was not allowed to drive a car. Mr. Barber disputed the characterization of their relationship as abusive but admitted to arguments between them. He admitted illegal drug use and accused petitioner of the same behavior.

Petitioner provided occasional unpaid assistance to Mr. Barber in his painting and paperhanging business (the business). She was expected to keep expense records for the business; however, the task proved difficult because Mr. Barber did not keep close track of his receipts and taking care of their son was demanding. Sometimes Mr. Barber gave petitioner checks from his

paperhanging or construction jobs to pay household or business bills. Petitioner deposited these checks in a bank account in the name of Mr. Barber or his business, for which she was an authorized cosignatory. Other times, Mr. Barber cashed checks for paperhanging and construction jobs at the banks of the drawers. Petitioner did not know what happened to the money from those transactions.

In the early years of their marriage, petitioner filed Federal income tax returns as "married filing separately." At a certain point, at the behest of Mr. Barber, she stopped filing separately in order that the two of them could jointly file, but thereafter no returns were filed for a period of years. The reasons given by petitioner and Mr. Barber for not filing included poor record keeping for Mr. Barber's business, financial difficulties, and marital and personal stress.

In the early 1990s, the Internal Revenue Service (IRS) contacted petitioner and Mr. Barber about their 1987 through 1991 years for which no returns had been filed. The IRS prepared joint returns for those years, including the year at issue. Petitioner and Mr. Barber met with an IRS examiner in connection with these returns. Petitioner later regretted her decision to file joint returns because, as she stated, during most of those years, she had earned little or no income. The 1987 through 1991

returns were filed in April 1993.  Petitioner and Mr. Barber later filed joint returns for 1992, 1993, and 1994.

On the 1987 joint return, the year at issue, petitioner reported her income of $18,923 from ACBJ.  Mr. Barber reported self-employment income of $6,798 from his business.  The tax due was $3,442, which included $835 in self-employment tax.  After subtracting $1,746 in Federal income tax withholdings, the 1987 return reflected a balance due of $1,696.  No payments were submitted with the 1987 through 1991 returns.  Petitioner and Mr. Barber initially intended to execute and pay their delinquent taxes through an installment agreement with the IRS; however, they did not follow through with that intention.

Petitioner and Mr. Barber first separated in early 1995. The couple reconciled in July 1995 through February or March 1996.  Thereafter petitioner instituted divorce proceedings.  A final decree of divorce was issued in December 1998.  The divorce decree included a provision placing responsibility for the payment of past tax debts on Mr. Barber.  The decree ordered:

> that the Respondent [Mr. Barber] assume responsibility for the entire debt currently due and owing to the Internal Revenue Service in the approximate sum of $30,000.  The Respondent shall assume said debt and shall indemnify and hold harmless the Petitioner from his failure to pay same.

In exchange for this provision, petitioner did not make any claim to her share of the couple's equity in the marital home or to

obtain any of the vehicles Mr. Barber had.  Petitioner was named the primary physical custodian of their son.  Mr. Barber was ordered to pay child support.  After an initial delinquency on the child support obligation, Mr. Barber subsequently became current with his payments.

As of the time of the trial of this case, Mr. Barber had not filed Federal income tax returns since the last joint return filed with petitioner for the year 1994.  In addition, in order to avoid levy actions, he no longer used a checking account.  He stated that he "jointly owns" a 1998 Ford pickup truck with a friend.  Mr. Barber makes all the payments on the vehicle loan and exclusively drives the truck, which is registered in Oklahoma.  Since May 2001, he has served as court-appointed guardian for his grandmother's lake property.  The property was to be sold with the proceeds to be used for nursing home care.

Mr. Barber admitted liability for the joint tax debt with petitioner for the year in question.  However, since the divorce, Mr. Barber made no payments toward the joint tax debts with petitioner nor made significant efforts to settle their unpaid tax liabilities.  He described himself as "overwhelmed" and the situation as "hopeless".  Asked about the possibility of entering into an installment agreement, he stated:  "Well, I'd consider it, but I'm reluctant to enter into an agreement that I may not be able to keep and that will never substantially reduce my tax

burden." Petitioner has taken no legal action against Mr. Barber to enforce the divorce decree making him responsible for their unpaid taxes.

After the divorce, petitioner earned wages on which Federal income taxes were withheld. She resumed filing separate returns in 1995. Her 1995, 1996, and 1997 returns had overpayments of $130, $2,155, and $1,730, respectively, which respondent applied to the joint debt for 1987. The application of these overpayments occurred prior to July 22, 1998. Her 1998 return, filed in October 1999, showed an overpayment of $1,675, $920.05 of which was also applied to the 1987 debt during the week of November 21-27, 1999. The remainder of the 1998 overpayment was applied to her 1988 tax debt. The applied overpayments, totaling $4,935.05, along with petitioner's 1987 withholding, another payment by levy, and an additional overpayment from the 1994 joint return, satisfied the amount due from 1987, including all taxes, interest, and penalties assessed for that year.

In 1999, petitioner engaged the assistance of Leonard E. Goldammer, an enrolled agent authorized to practice before the IRS. In May 2000, on petitioner's behalf, Mr. Goldammer filed with the IRS a Form 8857, Request for Innocent Spouse Relief, for the years 1987 through 1993.[2] As part of her request for relief,

---

[2] Mr. Goldammer simultaneously filed Forms 843, Claim for (continued...)

petitioner sought a refund of $4,935.05, the amount of her overpayments from the years 1995, 1996, 1997, and part of 1998 that respondent had applied to her joint liability for 1987. Respondent issued a determination letter in June 2001 denying petitioner's request for relief for 1987 under section 6015(f) because, at the time the request for relief from joint liability was made, the tax liability for 1987 had already been fully satisfied. At the time of trial, respondent had made no determination as to the other periods, 1988 through 1993.

The issue for decision is whether respondent's denial of relief from joint liability to petitioner for her 1987 Federal income tax under section 6015(f) was an abuse of discretion. Petitioner bears the burden of proof on this issue. Rule 142(a).[3] In deciding whether petitioner has carried her burden of proof, witness credibility is an important consideration. See Ishizaki v. Commissioner, T.C. Memo. 2001-318. The Court is not required to accept petitioner's uncorroborated or self-serving testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

---

[2](...continued)
Refund and Request for Abatement, for 1995 through 1998.

[3]    Although sec. 7491(a) may apply in specified circumstances to place the burden on the Commissioner, the examination of petitioner's 1987 return began before the effective date of that section. See also Jonson v. Commissioner, 118 T.C. 106, 126 (2002) (a taxpayer bears the burden of proving that respondent abused respondent's discretion in denying relief under sec. 6015(f)); Mellen v. Commissioner, T.C. Memo. 2002-280.

Further, the Commissioner's exercise of discretion is entitled to due deference; in order to prevail, the taxpayer must demonstrate that, in not granting relief, the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Mailman v. Commissioner, 91 T.C. 1079, 1082-1084 (1988).

Generally, spouses filing joint Federal income tax returns are jointly and severally liable for all taxes due. Sec. 6013(d)(3). Under certain circumstances, however, section 6015 provides relief from this general rule.[4] Section 6015 applies to any liability for tax arising after July 22, 1998, and to any liability for tax arising on or before July 22, 1998, but remaining unpaid as of such date. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740. Section 6015 does not apply if the tax was paid in full on or before July 22, 1998. Brown v. Commissioner, T.C. Memo. 2002-187.

Section 6015 significantly relaxed the requirements for relief from joint liability by providing three avenues for relief to a taxpayer who has filed a joint return: (1) Section 6015(b)

---

[4] Sec. 6015 was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 734. Prior to the enactment of sec. 6015, relief from the imposition of joint and several liability for spouses filing joint returns was available under sec. 6013(e).

provides relief with respect to understatements of tax attributable to certain erroneous items on the return; (2) section 6015(c) provides relief for a portion of an understatement of tax for taxpayers who are separated or divorced; and (3) section 6015(f) more broadly confers on the Secretary discretion to grant equitable relief for taxpayers who otherwise do not qualify for relief under section 6015(b) or (c).

Petitioner was not eligible for relief under section 6015(b) or (c). Therefore, her petition falls under the equitable relief provision in section 6015(f). Section 6015(f) provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>
> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2000-15, 2000-1 C.B. 447, 448, that the Commissioner will consider in determining whether an individual qualifies for relief under section 6015(f). Rev. Proc. 2000-15, sec. 4.01, lists seven threshold conditions which must be

satisfied before the Commissioner will consider a request for relief under section 6015(f).  These conditions are:

> (1) The requesting spouse filed a joint return for the taxable year for which relief is sought;

> (2) Relief is not available to the requesting spouse under sec. 6015(b) or 6015(c);

> (3) The requesting spouse applies for relief no later than two years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse;

> (4) Except as provided in the next sentence, the liability remains unpaid.  A requesting spouse is eligible to be considered for relief in the form of a refund of liabilities for: (a) amounts paid on or after July 22, 1998, and on or before April 15, 1999; and (b) installment payments, made after July 22, 1998, pursuant to an installment agreement entered into with the Service and with respect to which an individual is not in default, that are made after the claim for relief is requested;

> (5) No assets were transferred between the spouses filing the joint return as part of a fraudulent scheme by such spouses;

> (6) There were no disqualified assets transferred to the requesting spouse by the nonrequesting spouse.  If there were disqualified assets transferred to the requesting spouse by the nonrequesting spouse, relief will be available only to the extent that the liability exceeds the value of such disqualified assets.  For this purpose, the term "disqualified asset" has the meaning given such term by section 6015(c)(4)(B); and

> (7) The requesting spouse did not file the return with fraudulent intent.

Rev. Proc. 2000-15, section 4.01, <u>supra</u>.

Respondent's position is that petitioner did not meet all of the seven threshold conditions described above, so respondent denied petitioner relief. In particular, respondent relies on condition 4 quoted above, which, in part, states that the tax liability for which relief is sought "remains unpaid". Respondent argues that, since the last payment that was applied to petitioner's 1987 tax liability was made in November 1999, and since that payment fully satisfied the 1987 tax liability, there was no amount that remained "unpaid" at the time petitioner filed her claim for relief under section 6015 in May 2000.

The Court disagrees with respondent. In Washington v. Commissioner, 120 T.C. 137 (2003), this Court held that, subject to the limitations on refunds set forth in sections 6511, 6512(b), 7121, and 7122, section 6015 applies to the full amount of any pre-existing tax liability for a particular taxable year if any portion of that liability remains unpaid as of the date of enactment of section 6015, July 22, 1998, and not just to the portion of the tax liability remaining unpaid after July 22, 1998. Moreover, neither section 6015 nor Rev. Proc. 2000-15 provides that a spouse is precluded from applying for relief under section 6015 if the tax liability has been fully satisfied at the time the application for relief is filed. In petitioner's case, a portion of her 1987 tax liability did remain unpaid after

July 22, 1998. The Court, therefore, considers petitioner's entitlement to relief under Rev. Proc. 2000-15, sec. 4.02, supra.

If a requesting spouse satisfies all of the applicable threshold conditions, Rev. Proc. 2000-15, sec. 4.01, provides that such spouse may be entitled to relief under section 6015(f) if, taking into account all of the facts and circumstances, the IRS determines that it would be inequitable to hold the requesting spouse liable for such liability. Where a liability reported on a joint return is unpaid, Rev. Proc. 2000-14, sec. 4.02, provides the circumstances under which equitable relief under section 6015(f) will ordinarily be granted. Where, as here, a taxpayer does not qualify for relief under section 4.02, the IRS may still grant relief under section 4.03. Rev. Proc. 2000-15, sec. 4.03, supra, provides a partial list of positive and negative factors that will be taken into account in determining whether full or partial relief will be granted under section 6015(f). No single factor is to be determinative in any particular case; all factors are to be considered and weighed appropriately, and the list of factors is not intended to be exhaustive. Collier v. Commissioner, T.C. Memo. 2002-144; Rev. Proc. 2000-15, sec. 4.03.

Rev. Proc. 2000-15, sec. 4.03(a), supra, sets forth positive factors that weigh in favor of relief. As pertinent here, that section provides:

(1) Factors weighing in favor of relief.  The factors weighing in favor of relief include, but are not limited to, the following:

(a) Marital status.  The requesting spouse is * * * divorced from the nonrequesting spouse.

(b) Economic hardship.  The requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from liability is not granted.

(c) Abuse.  The requesting spouse was abused by the nonrequesting spouse, but such abuse did not amount to duress.

(d) No knowledge or reason to know.  In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know that the liability would not be paid. * * *

(e) Nonrequesting spouse's legal obligation.  The nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability.  This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at the time the divorce decree or agreement was entered into, that the nonrequesting spouse would not pay the liability.

(f) Attributable to nonrequesting spouse.  The liability for which relief is sought is solely attributable to the nonrequesting spouse.

Rev. Proc. 2000-15, sec. 4.03(2), sets forth negative factors that weigh against relief.  As pertinent here, that section provides:

(2) Factors weighing against relief.  The factors weighing against relief include, but are not limited to, the following:

(a) Attributable to the requesting spouse.  The unpaid liability * * * is attributable to the requesting spouse.

(b) Knowledge, or reason to know.  A requesting spouse knew or had reason to know * * * that the reported liability would be unpaid at the time the return was signed.  This is an extremely strong factor weighing against relief. * * *

(c) Significant benefit.  The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability * * *.

(d) Lack of economic hardship.  The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

(e) Noncompliance with federal income tax laws.  The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

(f) Requesting spouse's legal obligation.  The requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the liability.

In deciding whether respondent's determination that petitioner is not entitled to relief under section 6015(f) was an abuse of discretion, the Court considers evidence relating to all the facts and circumstances.  Washington v. Commissioner, supra.

On this record, the Court finds that the facts and circumstances weigh against granting relief to petitioner for the year 1987.  Most importantly, petitioner knew or had reason to know, at the time the return was signed in 1993, that the liability reported for 1987 would be unpaid.  Butler v. Commissioner, 114 T.C. 276 (2000).  Petitioner and Mr. Barber

both participated in the preparation of the return.  They both signed the jurat on the return yet remitted no payment on the balance due at the time of filing.  Petitioner was involved in the family finances and the record keeping for Mr. Barber's business; she participated in the decision not to pay the taxes. Rev. Proc. 2000-15, section 4.03(2)(b) provides that knowledge that the liability would be unpaid is "an extremely strong factor weighing against relief".  Her knowledge that the reported liability would be unpaid also negates two positive factors weighing in favor of relief:  the "no knowledge or reason to know" factor and the "legal obligation" factor.  Rev. Proc. 2000-15, sec. 4.03(1)(d) and (e), 2000-1 C.B. at 449.

Further weighing against relief, roughly half of the unpaid liability is attributable to petitioner.  To be a factor weighing in favor of relief, the liability must be "solely" attributable to the nonrequesting spouse.  Id. sec. 4.03(1)(f).  By contrast, the unpaid liability being attributable (but not solely so) to the requesting spouse weighs against relief.  Id. sec. 4.03(2)(a).  Moreover, the Court did not find petitioner's allegation of abuse by Mr. Barber to be credible, and petitioner did not establish economic hardship.[5]  Given these facts and

---

[5]      Rev. Proc. 2000-15, sec. 4.02(1)(c), 2000-1 C.B. 447, 448, provides that the determination of whether a requesting spouse will suffer economic hardship will be made by the

(continued...)

circumstances, petitioner does not present the unusually strong case in favor of equitable relief despite her knowledge that the liability would be unpaid, as contemplated by Rev. Proc. 2000-15, sec. 4.03(2)(b), 2000-1 C.B. at 449. The Court holds that respondent committed no abuse of discretion in denying section 6015(f) relief to petitioner for the year 1987.[6]

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.

---

[5](...continued)
Commissioner or the Commissioner's delegate and will be based on rules similar to those provided in sec. 301.6343-1(b)(4), Proced. & Admin. Regs. Such regulation provides that the Commissioner will consider any information provided by the taxpayer that is relevant to the determination, including, but not limited to, the taxpayer's age, ability to earn, responsibility for dependents, and the amount reasonably necessary for basic living expenses. Petitioner presented insufficient evidence to support a finding of economic hardship. She did not provide documentation of her expenses; she has been employed, and Mr. Barber was providing child support payments.

[6] The Court makes no findings regarding the applicability of the factors listed in Rev. Proc. 2000-15, supra, to any other year.