T.C. Summary Opinion 2005-41


UNITED STATES TAX COURT


FRANCENIA M. GRIFFIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4517-04S.          Filed April 13, 2005.


Francenia M. Griffin, pro se.

<u>Roberta Shumway</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue.

Respondent determined that petitioner is not entitled to relief from joint and several liability for tax under section 6015(f) for tax years 1992, 1993, 1994, 1995, 1996, 1997, and 1998 with respect to joint returns filed with Graylyne Griffin. Petitioner filed a petition under section 6015(e)(1) seeking review of respondent's determination.

The issue for decision is whether respondent's denial of petitioner's request for relief pursuant to section 6015 was an abuse of discretion.

### Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in San Antonio, Texas, on the date the petition was filed in this case.

Petitioner and her former spouse, Graylyne H. Griffin (Mr. Griffin), were married in 1981. From the time that they were first married, petitioner and Mr. Griffin usually filed their Federal income tax returns jointly. During their marriage, between 1996 and 1998, petitioner obtained an associate's degree in applied science at Saint Phillips College. Since obtaining an associate's degree, petitioner has been employed as a certified occupational therapy assistant. Petitioner and Mr. Griffin ceased living together on March 12, 2001. Petitioner's and Mr.

Griffin's divorce was finalized on November 17, 2003. The divorce decree provides in relevant part:

> FEDERAL INCOME TAX
> IT IS ORDERED AND DECREED that GRAYLYNE GRIFFIN and FRANCENIA GRIFFIN shall be equally responsible for all federal income tax liabilities of the parties from the date of marriage through December 31, 2001, and each party shall timely pay 50 percent of any deficiencies, assessments, penalties, or interest due thereon and shall indemnify and hold the other party and his or her property harmless from 50 percent of such liabilities unless such additional tax, penalty, and/or interest resulted from a party's omission of taxable income or claim of erroneous deductions. In such case, the portion of the tax, penalty, and/or interest relating to the omitted income or claims of erroneous deductions shall be paid by the party who earned the omitted income or proffered the claim for an erroneous deduction. The parties agree that nothing contained herein shall be construed as or is intended as a waiver of any rights that a party has under the "Innocent Spouse" provisions of the Internal Revenue Code.
>
> IT IS ORDERED AND DECREED that if a refund is made for overpayment of taxes for any year during the parties' marriage through December 31 of 2001, each party shall be entitled to one-half of the refund, and the party receiving the refund check is designated a constructive trustee for the benefit of the other party, to the extent of one-half of the total amount of the refund, and shall pay to the other party one-half of the total amount of the refund check within five days of receipt of the refund check. Either party is ORDERED to endorse a refund check on presentation by the other party.

Petitioner and Mr. Griffin did not timely file their joint Federal income tax returns for tax years 1992, 1993, 1994, 1995, 1996, 1997, and 1998. Petitioner knew that neither she nor Mr. Griffin had filed Federal income tax returns for this period of time.

Petitioner and Mr. Griffin filed a voluntary petition in the U.S. Bankruptcy Court, Western District of Texas, San Antonio Division, under Chapter 13 on August 3, 1999. After they filed for bankruptcy in 1999, petitioner and Mr. Griffin learned that their bankruptcy proceeding would be dismissed unless they became current in the filings of their Federal income tax returns. Due to the threatened dismissal of their bankruptcy proceeding, petitioner contacted an enrolled agent to assist her in preparing joint Federal income tax returns for the 1992 through 1998 tax years.

On December 15, 1999, petitioner and Mr. Griffin filed their 1992, 1993, 1994, 1995, 1996, 1997, and 1998 joint Federal income tax returns. Their joint Federal income tax returns for the taxable years 1992 through 1998, inclusive, show the following:

| Taxable Year | Total Tax | Federal Income Tax Withheld | Amount Owed |
|---|---|---|---|
| 1992 | $7,118 | $1,901 | [1]$5,435 |
| 1993 | 4,697 | 2,474 | [2]2,304 |
| 1994 | 2,751 | 2,436 | 315 |
| 1995 | 5,149 | 4,201 | 948 |
| 1996 | 4,699 | 4,051 | [3]659 |
| 1997 | 6,250 | 2,619 | [4]3,756 |
| 1998 | 1,866 | 821 | [5]1,088 |

[1]Includes $218 for estimated tax penalty.
[2]Includes $81 for estimated tax penalty.
[3]Includes $11 for estimated tax penalty.
[4]Includes $125 for estimated tax penalty.
[5]Includes $43 for estimated tax penalty.

The amounts of taxes shown as due on petitioner's and Mr. Griffin's joint Federal income tax returns for tax years 1992

through 1998 were not paid. At the time petitioner signed the 1992 through 1998 Forms 1040, U.S. Individual Income Tax Return, she knew that the balances due would not be paid because she and Mr. Griffin were in bankruptcy and had no funds with which to pay the taxes. There are still currently balances due on petitioner's and Mr. Griffin's joint Federal income tax liabilities for the 1992 through 1998 tax years.

Petitioner was not employed during the 1992 through 1998 tax years, except for a period of approximately 2 weeks to 2 months. Petitioner reported no income attributable to services she performed on the Forms 1040 she and Mr. Griffin filed for the 1992 through 1998 tax years.

Petitioner had actual knowledge that Mr. Griffin earned income during the 1992 through 1998 tax years. Petitioner was not abused by Mr. Griffin. No assets were transferred between petitioner and Mr. Griffin as part of a fraudulent scheme, and no disqualified assets were transferred to petitioner by Mr. Griffin.

On April 11, 2003, petitioner filed a Form 8857, Request for Innocent Spouse Relief, with respondent, requesting innocent spouse relief with respect to the 1992 through 1998 tax years. On December 19, 2003, respondent sent petitioner a letter advising her of the determination denying relief from liability on the 1992 through 1998 joint returns. On March 10, 2004,

petitioner filed a petition with this Court for review of respondent's determination denying her request for relief from joint and several liability with respect to the 1992 through 1998 tax years.

## Discussion

As a general rule, spouses making joint Federal income tax returns are jointly and severally liable for all taxes shown on the return or found to be owing. Sec. 6013(d)(3). In certain situations, however, a joint return filer can avoid such joint and several liability by qualifying for relief therefrom under section 6015.[1]

Section 6015 applies to any liability for tax arising after July 22, 1998, and to any liability for tax arising on or before July 22, 1998, but remaining unpaid as of such date. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740. Section 6015 does not apply if the tax was paid in full on or before July 22, 1998. Brown v. Commissioner, T.C. Memo. 2002-187. Section 6015 is applicable to the present situation because even though all but one of the liabilities at issue arose before July 22, 1998, those liabilities remained unpaid as of such date.

---

[1]Sec. 6015 was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201, 112 Stat. 734. Prior to the enactment of sec. 6015, relief from the imposition of joint and several liability for spouses filing joint returns was available under sec. 6013(e).

Section 6015 significantly relaxed the requirements for relief from joint liability by providing three avenues for obtaining relief to a taxpayer who has filed a joint return: (1) Section 6015(b) provides full or apportioned relief with respect to understatements of tax attributable to certain erroneous items on the return; (2) section 6015(c) provides relief for a portion of an understatement of tax for taxpayers who are separated or divorced; and (3) section 6015(f) (potentially the broadest of the three avenues and the avenue directly at issue in this case) confers upon the Secretary discretion to grant equitable relief for taxpayers who otherwise do not qualify for relief under section 6015(b) or (c).

Petitioner requested relief under section 6015 from liability for the payment of the taxes reported on the 1992, 1993, 1994, 1995, 1996, 1997, and 1998 joint returns that were not paid when the returns were filed. Respondent treated petitioner's request for relief under section 6015 as an election under section 6015(b), (c), and (f), and determined that petitioner was not entitled to the requested relief.

If a taxpayer's request for relief under section 6015 is denied, the taxpayer may petition this Court, pursuant to section 6015(e)(1), for a review of such determination. Section

6015(e)(1)(A)[2] provides that a taxpayer against whom a deficiency has been asserted who elects to have section 6015(b) or (c) apply may petition this Court "to determine the appropriate relief available to the individual" under section 6015, including relief under section 6015(f). Fernandez v. Commissioner, 114 T.C. 324, 330-331 (2000).

Section 6015(b) provides a spouse relief from joint liability for an "understatement" (as defined in section 6662(d)(2)(A)) of tax attributable to erroneous items of the other spouse.[3] With regard to the present case, petitioner does not seek relief from an understatement of tax but rather from the taxes shown on the 1992, 1993, 1994, 1995, 1996, 1997, and 1998 returns that were not paid when the returns were filed. Because there is no understatement of tax for 1992, 1993, 1994, 1995, 1996, 1997, and 1998, relief is not available to petitioner under

---

[2] SEC. 6015(e). Petition For Review By Tax Court.--

(1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply--

(A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed--

[3] Sec. 6662(d)(2)(A) defines an understatement as the excess of the amount of tax required to be shown on the return over the tax imposed which is shown on the return, reduced by any rebate.

section 6015(b). See <u>Washington v. Commissioner</u>, 120 T.C. 137, 146-147 (2003); see also <u>Hopkins v. Commissioner</u>, 121 T.C. 73, 88 (2003).

Section 6015(c) provides relief from joint liability for spouses who filed a joint return if they are no longer married, are legally separated, or have lived apart for a 12-month period. Such spouses may elect to be treated, for purposes of determining tax liability, as if separate returns had been filed. Section 6015(c)(1) provides proportionate relief for any "deficiency which is assessed with respect to the return". Relief is not available under section 6015(c) with respect to an unpaid liability for tax reported on the return. As noted, in the present case, petitioner is seeking relief of the amounts reflected as due on the 1992, 1993, 1994, 1995, 1996, 1997, and 1998 joint returns. Because there is no "deficiency" for 1992, 1993, 1994, 1995, 1996, 1997, and 1998, relief is not available to petitioner under section 6015(c). See <u>Washington v. Commissioner</u>, <u>supra</u>; see also <u>Hopkins v. Commissioner</u>, <u>supra</u>.

Therefore, the only opportunity for relief available to petitioner is section 6015(f). Section 6015(f) provides as follows:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual

liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-32 I.R.B. 296,[4] that the Commissioner will consider in determining whether an individual qualifies for relief under section 6015(f).  Section 4.01 of Rev. Proc. 2003-61, 2003-32 I.R.B. at 297, lists seven conditions (threshold conditions) which must be satisfied before the Commissioner will consider a request for relief under section 6015(f).  Respondent agrees that in the present case these threshold conditions are satisfied.

Section 4.03(2) of Rev. Proc. 2003-61, 2003-32 I.R.B. at 298, lists nonexclusive factors that the Commissioner will consider in determining whether, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the unpaid income tax liability or deficiency, and full or partial equitable relief under section

---

[4]This revenue procedure superseded Rev. Proc. 2000-15, 2000-1 C.B. 447, and is effective either for requests for relief filed on or after Nov. 1, 2003, or for requests for which no preliminary determination letter was issued as of Nov. 1, 2003. In the present case, the request for relief was still pending as of Nov. 1, 2003, and the preliminary determination letter was issued on Dec. 19, 2003; therefore, Rev. Proc. 2003-61, 2003-32 I.R.B. 296 is applicable in the present situation.

6015(f) should be granted.  Such factors that may be relevant to whether the Service will grant equitable relief are stated in section 4.03 of Rev. Proc. 2003-61, 2003-32 I.R.B. 296, as follows:

(i) Marital Status.  Whether the requesting spouse is separated (whether legally separated or living apart) or divorced from the nonrequesting spouse. * * *

(ii) Economic Hardship.  Whether the requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if the Service does not grant relief from the income tax liability.

(iii) Knowledge or reason to know.

(A) Underpayment cases.  In the case of an income tax liability that was properly reported but not paid, whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability.

*     *     *     *     *     *     *

(C) Reason to know.  For purposes of (A) and (B) above, in determining whether the requesting spouse had reason to know, the Service will consider the requesting spouse's level of education, any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business and household financial matters, the requesting spouse's business or financial expertise, and any lavish or unusual expenditures compared with past spending levels.

(iv) Nonrequesting spouse's legal obligation. Whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement.  This factor will not weigh in favor of relief if the requesting spouse knew or had reason to know, when entering into the divorce decree or agreement, that the nonrequesting spouse would not pay the income tax liability.

(v) Significant benefit.  Whether the requesting spouse received significant benefit (beyond normal support) from the unpaid income tax liability or item giving rise to the deficiency.  See Treas. Reg. §1.6015-2(d).

(vi) Compliance with income tax laws. Whether the requesting spouse has made a good faith effort to comply with income tax laws in the taxable years following the taxable year or years to which the request for relief relates.

(b) Factors that, if present in a case, will weigh in favor of equitable relief, but will not weigh against equitable relief if not present in a case include, but are not limited to, the following:

(i) Abuse.  Whether the nonrequesting spouse abused the requesting spouse.  The presence of abuse is a factor favoring relief.  A history of abuse by the nonrequesting spouse may mitigate a requesting spouse's knowledge or reason to know.

(ii) Mental or physical health.  Whether the requesting spouse was in poor mental or physical health on the date the requesting spouse signed the return or at the time the requesting spouse requested relief.  The Service will consider the nature, extent, and duration of illness when weighing this factor.

To prevail under section 6015(f), petitioner must show that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion.  Washington v. Commissioner, 120 T.C. 137 (2003); Jonson v. Commissioner, 118 T.C. 106, 125 (2002) (citing Butler v. Commissioner, 114 T.C. 276, 292 (2000)), affd. 353 F.3d 1181 (10th Cir. 2003).  Action constitutes an abuse of discretion under this standard where it is arbitrary, capricious, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  The question of whether respondent's determination was arbitrary, capricious, or

- 13 -

without sound basis in fact is a question of fact.  Cheshire v.
Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th
Cir. 2002).  In deciding whether respondent's determination, that
petitioner is not entitled to relief under section 6015(f), was
an abuse of discretion, we consider evidence relating to all the
facts and circumstances.

Respondent acknowledges that the following factors weigh in
favor of granting relief to petitioner:  (1) Marital status--
although still married to Mr. Griffin, petitioner and Mr. Griffin
were in the process of a divorce and had ceased living together
on March 12, 2001; and (2) Compliance with Income Tax Laws--the
examiner determined and respondent agrees that petitioner has
complied with Federal income tax laws since her divorce was
finalized.

Respondent contends:  (1) Petitioner would not suffer
economic hardship if the Service does not grant relief from the
income tax liabilities; (2) petitioner did not have a reasonable
belief that any portion of the underpayments would be paid at the
time she signed the applicable returns; (3) the nonrequesting
spouse was legally liable for only one-half of the pre-1999 joint
Federal income tax liabilities; (4) petitioner obtained an
associate's degree during tax years 1992 through 1998; therefore,
petitioner gained a significant benefit during such time; and (5)
petitioner was not abused by her former husband.  Respondent

asserts that these factors weigh against granting relief to petitioner. We now address each of these factors separately.

1. Economic Hardship

Respondent contends that petitioner offered no evidence to show that she would suffer an economic hardship if relief were denied. Respondent asserts that pursuant to section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., an economic hardship exists if satisfaction of a levy will cause a taxpayer to be unable to pay his/her reasonable basic living expenses. Respondent maintains that respondent's collection activity would not leave petitioner unable to pay her basic living expenses.[5] In

_____

[5]Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., provides:

(ii) Information from taxpayer. In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including--

(A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;

(B) The amount reasonably necessary for food, clothing, housing, (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);

(C) The cost of living in the geographic area in which the taxpayer resides;

(continued...)

addition, respondent asserts that petitioner provided no documentation to contradict the analysis performed by the examiner or to demonstrate an economic hardship.

The examiner performed an analysis of petitioner's income and reasonable basic living expense.  During the applicable period of time, petitioner earned wages of $2,700 per month and received $718 per month in child support, for total monthly income of $3,418.  Petitioner identified her necessary monthly living expenses of approximately $3,000 per month.  Based on these facts, the examiner found that petitioner would not suffer economic hardship if relief were not granted.  Petitioner did not supply any evidence at trial to contradict the above facts or the finding of the examiner; therefore, we find that petitioner will not suffer economic hardship if relief is not granted.  This factor favors denying relief.

2.  Knowledge or Reason To Know

In the case of an income tax liability that was properly reported but not paid, the fact that the requesting spouse did

---

[5](...continued)
        (D) The amount of property exempt from levy which is
        available to pay the taxpayer's expenses;

        (E) Any extraordinary circumstances such as special
        education expenses, a medical catastrophe, or natural
        disaster; and

        (F) Any other factor that the taxpayer claims bears on
        economic hardship and brings to the attention of the
        director.

not know and had no reason to know that the liability would not be paid is a factor weighing in favor of granting relief. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii). By contrast, the fact that the requesting spouse knew or had reason to know that the reported liability would go unpaid is a factor weighing against relief. Id.

The examiner determined that petitioner did not satisfy this condition in favor of granting relief because petitioner did not have a reasonable belief that any portion of the underpayments would be paid at the time she signed the returns. Petitioner stipulated that at the time she signed the 1992, 1993, 1994, 1995, 1996, 1997, and 1998 Forms 1040, she knew there were balances due for each of the tax years and she knew that the balances due would not be paid because she and Mr. Griffin were in bankruptcy and had no funds with which to pay the taxes. Thus, we find that petitioner knew or had reason to know that the reported liabilities would not be paid. This factor favors denying relief to petitioner.

3. Requesting Spouse's Legal Obligation

Petitioner's divorce decree specifically states:

[petitioner and Mr. Griffin] shall be equally responsible for all federal income tax liabilities of the parties from the date of marriage through December 31, 2001, and each party shall timely pay 50 percent of any deficiencies, assessments, penalties, or interest due thereon and shall indemnify and hold the other party and his or her property harmless from 50 percent of such liabilities unless such additional tax, penalty, and/or interest resulted from a

> party's omission of taxable income or claim of erroneous
> deductions...

Respondent contends that the fact that petitioner has a legal obligation under the divorce decree to pay the unpaid tax liabilities weighs against granting relief to petitioner. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), indicates that if Mr. Griffin had a legal obligation under the divorce decree to pay the tax liabilities, then that fact would weigh in favor of granting relief to petitioner. Likewise, if the divorce decree had placed the obligation to pay the taxes on petitioner, then that fact would weigh against granting relief to petitioner as indicated in Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv). In the present case, the divorce decree established that each party was liable for 50 percent of the liabilities. Therefore, this is a neutral factor. However, the fact that the divorce decree established that each party was liable for 50 percent of the liabilities does indicate that petitioner had a reasonable belief that such liabilities would not be paid in full by Mr. Griffin.

4. Significant Benefit

The examiner determined that petitioner did not significantly benefit from the underpayments and thus found that this factor favored granting relief to petitioner. However, at trial, respondent argued that petitioner's obtaining an associate's degree was a significant benefit. During the period from 1992 to 1998, petitioner did obtain an associate's degree.

Respondent noted that, since obtaining the degree, petitioner has been gainfully employed as a certified occupational respiratory therapist and that such degree has enhanced petitioner's employment opportunities. We find that in today's society it is normal for one spouse to work while the other attends educational training; i.e., college. Therefore, we find that petitioner obtaining an associate's degree was not beyond normal support, and the examiner was correct in concluding that this factor favors granting relief to petitioner.

5. Abuse

Petitioner stipulated that she was not abused by Mr. Griffin or otherwise coerced into executing the 1992, 1993, 1994, 1995, 1996, 1997, and 1998 joint returns. Lack of spousal abuse is a factor listed in section 4.03(2)(b)(1) of Rev. Proc. 2003-61 that will weigh in favor of equitable relief if found, but will not weigh against equitable relief if not present in a case. Therefore, this factor is neutral.

## Conclusion

In the present case the factors that weigh against granting relief to petitioner outweigh those factors favoring relief. Therefore, under these facts and circumstances, we hold that respondent did not abuse his discretion in denying equitable relief to petitioner under section 6015(f).

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent</u>.