T.C. Summary Opinion 2010-64

UNITED STATES TAX COURT

DANA L. ACOBA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4002-05S.                    Filed May 19, 2010.

Dana L. Acoba, pro se.

<u>Robert V. Boeshaar</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f) for 1999, 2000, and 2001.[1]

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. When the petition was filed, petitioner resided in the State of Washington.

Petitioner jointly filed Federal income tax returns with her then spouse, Eugene A. Acoba (Mr. Acoba), for 1999, 2000, and 2001. Both petitioner and Mr. Acoba earned wages from which Federal income taxes were withheld in 1999 and 2000. Both petitioner and Mr. Acoba earned wages and received retirement distributions from which Federal income tax was withheld in 2001. Petitioner and Mr. Acoba underpaid their Federal income tax liabilities for each of the years 1999, 2000, and 2001. Considering their respective wages, retirement distributions, and prepayment credits, the underpayments of taxes are not attributable solely to Mr. Acoba. Of the total $1,569 underpayment of tax for 1999, $723 was attributable to petitioner. Of the total $4,262 underpayment of tax for 2000,

---

[1]Petitioner's former husband, Eugene A. Acoba, was notified that petitioner was seeking relief from joint and several liability and that he had a right to intervene in the matter. He has not exercised his right to intervene.

$3,077 was attributable to petitioner. Of the total $4,153 underpayment of tax for 2001, $1,653 was attributable to petitioner.

On June 9, 2003, petitioner filed a Form 8857, Request for Innocent Spouse Relief. The preliminary determination letter was issued to petitioner on January 5, 2004, in response to her request for relief from liability under section 6015.[2]

Petitioner is a graduate of the University of Washington and has 23 years of experience in healthcare administration. Mr. Acoba has some technical college training.

Petitioner and Mr. Acoba divorced on June 13, 2002. As part of the judgment of divorce, petitioner and Mr. Acoba each agreed to pay "50% of Internal Revenue Service debt for back taxes, interest, and penalties". The judgment of divorce also contained an order restraining and enjoining Mr. Acoba from "assaulting, harassing, molesting or disturbing the peace of" petitioner or their minor child.

During the years at issue petitioner and Mr. Acoba shared a joint checking account to which petitioner had full access. They each deposited their incomes to the joint account. They each paid all of their bills from the joint account. Petitioner occasionally balanced the checkbook and picked up and opened the household mail.

-----

[2]See infra note 4.

Petitioner compiled all of the pertinent information for the preparation of their Federal income tax returns for the years at issue. Petitioner reviewed the joint Federal income tax returns before signing them. At the time the returns were signed petitioner knew that she and Mr. Acoba could not pay the taxes due because of the dire financial straits in which they found themselves.

Petitioner failed to file Federal income tax returns for 2002 and 2003.

Petitioner's request for relief under section 6015(f) was subsequently denied by respondent's Appeals Office. The case was called at a trial session of the Court in Seattle and was remanded to Appeals for further consideration. After further consideration, a final Appeals determination was issued, determining again that petitioner was not entitled to relief under section 6015(f).

## Discussion

Except as otherwise provided in section 6015, petitioner bears the burden of proof with respect to her entitlement to relief under section 6015. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

I. <u>Joint and Several Liability and Section 6015 Relief</u>

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income and liability for the resulting tax is joint and several. See also sec. 1.6013-4(b), Income Tax Regs. But the Internal Revenue Service (IRS) may relieve a taxpayer from joint and several liability under section 6015 in certain circumstances.

To obtain relief from joint and several liability, a spouse must qualify under section 6015(b), or, if eligible, may allocate liability under section 6015(c). In addition, if relief is not available under section 6015(b) or (c), a spouse may seek equitable relief under section 6015(f). <u>Fernandez v. Commissioner</u>, 114 T.C. 324, 329-331 (2000); <u>Butler v. Commissioner</u>, 114 T.C. 276, 287-292 (2000).

Relief under section 6015(b) or (c) is premised on the existence of a deficiency or an understatement of tax. Sec. 6015(b)(1)(B) and (c)(1); <u>Washington v. Commissioner</u>, 120 T.C. 137, 145 (2003); <u>Block v. Commissioner</u>, 120 T.C. 62, 65-66 (2003). This case does not involve a deficiency or an understatement of tax and, therefore, relief under section 6015(b) and (c) is not available to petitioner.

II. <u>Relief Under Section 6015(f)</u>

Where a spouse does not qualify for relief under section 6015(b) or (c), the IRS may relieve an individual from joint and

several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for any unpaid tax or deficiency.  In the case of an individual who requests equitable relief under section 6015(f),[3] section 6015(e) gives jurisdiction to the Court "to determine the appropriate relief available to the individual under this section".  The Court will apply a de novo scope and standard of review.  Porter v. Commissioner, 132 T.C. 203 (2009).

As contemplated by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, to be used in determining whether an individual qualifies for relief under that section.[4]  The Court also uses the guidelines in analyzing cases under section 6015.  See Washington v. Commissioner, supra.  Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, sets forth seven threshold conditions that must be

---

[3]The Tax Relief and Health Care Act of 2006 (TRHCA), Pub. L. 109-432, div. C., sec. 408(a), 120 Stat. 3061, amended sec. 6015(e)(1) to provide that this Court may review the Commissioner's denial of relief under sec. 6015 in any case where an individual requested relief under sec. 6015(f).  The amendment applies "with respect to liability for taxes arising or remaining unpaid on or after the date of the enactment of this Act."  Id. sec. 408(c), 120 Stat. 3062.  The date of enactment of the TRHCA was Dec. 20, 2006.

[4]Rev. Proc. 2003-61, 2003-2 C.B. 296, supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447.  The guidelines set forth in Rev. Proc. 2003-61, supra, are effective for requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending as of Nov. 1, 2003, for which no preliminary determination letter had been issued as of Nov. 1, 2003.  Id. sec. 7, 2003-2 C.B. at 299.

satisfied before the Commissioner will consider a request for equitable relief under section 6015(f).

A.  Threshold Conditions

Petitioner argues that she should be liable for only 50 percent of the liabilities for the years at issue as provided in the divorce decree.  The seventh of the seven threshold conditions for relief, however, requires that the liability from which the requesting spouse seeks relief be attributable to the nonrequesting spouse unless one of four exceptions apply, none of which is pertinent here.[5]  Petitioner is eligible for relief only from the part of the liability attributable to Mr. Acoba.  With respect to that part of the liability, the threshold conditions have been met.

B.  "Tier 1"

Where the threshold conditions have been met, Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, states that relief will ordinarily be granted with respect to underpayments of tax if all of the three so-called tier 1 factors are satisfied.  Respondent determined that petitioner satisfied only one of the tier 1 factors, that the requesting spouse was no longer married to the

---

[5]There is an exception for "abuse" before the return was signed as a result of which the requesting spouse did not challenge the treatment of items on the return.  There is an allegation of abuse here that does not meet these requirements. See infra pp. 12-13.

nonrequesting spouse when relief was requested.  Id. sec. 4.02(1)(a), 2003-2 C.B. at 298.

The other two requirements are that:  The requesting spouse, on the date of signing the joint return, had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability; and the requesting spouse will suffer economic hardship if the IRS does not grant relief.  Petitioner admitted at trial that at the time she signed the returns at issue she knew that her husband would not pay the liabilities reported on them.  Petitioner does not satisfy all the tier 1 requirements of Rev. Proc. 2003-61, sec. 4.02.

C.  "Tier 2"

Where the requesting spouse has satisfied the threshold conditions of Rev. Proc. 2003-61, sec. 4.01, but does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02, a determination may nevertheless be made under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298, to grant relief.  Rev. Proc. 2003-61, sec. 4.03, contains a nonexhaustive list of factors, so-called tier 2 factors, that the IRS will consider and weigh when determining whether to grant equitable relief under section 6015(f):  (1) Marital status, (2) economic hardship, (3) whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability, (4) the nonrequesting spouse's legal obligation, (5) significant

benefit, (6) compliance with income tax laws, (7) abuse, and (8) mental or physical health. Respondent, after considering the tier 2 factors, found that those not favoring relief outweighed those favoring relief. The Court, after examining the same factors, agrees with respondent.

Petitioner was divorced from Mr. Acoba when she requested relief. This factor weighs in favor of relief. See Banderas v. Commissioner, T.C. Memo. 2007-129.

Economic hardship applies if satisfaction of the tax liability in whole or in part "will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses." Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. The determination of a reasonable amount for basic living expenses will be made by the IRS and will vary according to the unique circumstances of the individual taxpayer. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298 (referring to Rev. Proc. 2003-61, sec. 4.02(1)(c) (citing section 301.6343-1(b)(4), Proced. & Admin. Regs.)).

In the Form 12510, Questionnaire for Requesting Spouse, that petitioner submitted with her Form 8857, petitioner showed that her income exceeded her reasonable basic living expenses by $200 per month. Petitioner testified that she owed $32,500 because of a civil suit but had approximately $50,000 of equity in her home. She testified at trial that her financial situation had changed

for the worse since she filed for relief, but she offered no other evidence on the issue.  On the basis of the evidence that was presented, the Court finds that petitioner would not suffer economic hardship, as that term is defined in section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., if she were required to pay the joint tax liability.  The Court finds that this factor weighs against relief.

Another tier 2 factor to be considered is whether the requesting spouse did not know or had no reason to know that the nonrequesting spouse would not pay the liability.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A), 2003-2 C.B. at 298.  In the case of a properly reported but unpaid liability, the relevant knowledge is whether the taxpayer knew or had reason to know when the return was signed that the tax would not be paid.  See Washington v. Commissioner, 120 T.C. at 151; see also Feldman v. Commissioner, T.C. Memo. 2003-201, affd. 152 Fed. Appx. 622 (9th Cir. 2005).  The Court has stated that "a reasonable belief that taxes would be paid must at minimum incorporate a belief that funds would be on hand within a reasonably prompt period of time."  See Banderas v. Commissioner, supra.  But see id. n.6.

The Court has found against petitioner on this factor. Therefore, this factor weighs against relief.  See Beatty v. Commissioner, T.C. Memo. 2007-167 (applying Rev. Proc. 2003-61, supra, and finding that knowledge or reason to know weighs

against relief); <u>Fox v. Commissioner</u>, T.C. Memo. 2006-22 (same); cf. <u>Levy v. Commissioner</u>, T.C. Memo. 2005-92 (applying Rev. Proc. 2000-15, 2000-1 C.B. 447, and stating that lack of knowledge weighs in favor of relief while knowledge or reason to know weighs against relief).

Where the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or an agreement, this factor weighs in favor of the requesting spouse. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003 C.B. at 298. There was no agreement which imposed a legal obligation on Mr. Acoba to pay all the outstanding income tax liabilities. This is a neutral factor.

Where the requesting spouse significantly benefited (beyond normal support) from the unpaid income tax liability, this is a factor against granting equitable relief. Rev. Proc. 2003-61, sec. 4.03(a)(v), 2003-2 C.B. at 299. The facts and circumstances here show and the parties agree that petitioner did not receive any significant benefits, beyond normal support, from the failure to pay the taxes. This factor weighs in favor of relief. See <u>Ewing v. Commissioner</u>, 122 T.C. 32, 46 (2004), vacated 439 F.3d 1009 (9th Cir. 2006).

If petitioner made a good faith effort to comply with income tax laws following the years to which the request relates, this factor may favor relief. Petitioner failed to file Federal

income tax returns for 2002 and 2003.  She testified at one point that upon the advice of unnamed IRS employees she did not file her returns.  Her Form 12510 and earlier testimony, however, were to the effect that with respect to the 2002 return she had a refund due of $3,800 "that I was withholding until the liability was separated."  She testified that "if that was wrong, I should have been told way before Appeals".

The Court concludes that petitioner did not make a good faith effort to comply with the income tax laws, and this factor weighs against relief.

Another tier 2 factor to be considered is whether the requesting spouse was abused by the nonrequesting spouse.  A history of abuse may, according to Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), 2003-2 C.B. at 299, mitigate a requesting spouse's knowledge or reason to know.[6]  The judgment of divorce contained an order restraining and enjoining Mr. Acoba from "assaulting, harassing, molesting or disturbing the peace of" petitioner or their minor child.  But there is no evidence to indicate whether the restraining order was the result of historical abuse or was a prophylactic measure taken by the court as an outcome of the divorce.

---

[6]Under Rev. Proc. 2000-15, supra, abuse was a separate factor to be considered by itself, not merely a mitigating factor.  Id. sec. 4.03(1)(c), 2000-1 C.B. at 449; see Nihiser v. Commissioner, T.C. Memo. 2008-135.

In part 1, question 11, of Form 12510, the inquiry about abuse during the years at issue, petitioner stated that the nature and extent of the abuse was "verbal, threats". Petitioner testified at trial that "there was physical abuse and there was mental abuse during those last" 2 years of her marriage. Petitioner provided, however, no further evidence on the issue.

Because petitioner had, by her own admission, actual knowledge that the taxes would not be paid, whether she had "reason to know" is not at issue. The record does not reveal any nexus between her actual knowledge and any verbal or physical abuse that may have been inflicted upon her. The Court finds the abuse factor will not weigh for or against equitable relief.

There is no evidence that petitioner has any mental or physical health problems, and this factor will not weigh against equitable relief. See Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii), 2003-2 C.B. at 299.

### Conclusion

There are three factors against and two factors in favor of relief. The Court's analysis of these factors, however, is not mechanical. Nevertheless, after weighing all the factors, the Court concludes that petitioner's intimate involvement in the financial matters of the marriage and her knowledge of the protracted financial decline of the marriage should have put her on notice that filing a joint Federal income tax return was, for her, a poor choice. The Court sustains respondent's

determination that petitioner is not entitled to relief from liability under section 6015(f).

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.