T.C. Summary Opinion 2011-66

UNITED STATES TAX COURT

LEE ANN SUTHER, Petitioner,
AND MARC V. SUTHER, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11413-09S.                    Filed June 6, 2011.

Lee Ann Suther, pro se.

Marc V. Suther, pro se.

Laura A. Price, for respondent.

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated,

subsequent section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This proceeding was commenced under section 6015 for review of respondent's determination that petitioner is not entitled to relief from joint and several liability with respect to an underpayment of Federal income tax reported on a joint Federal income tax return filed for 2001.

Background

Some of the facts have been stipulated[1] and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Florida at the time the petition was filed.

Petitioner and intervenor were married in 1984. At the time of trial petitioner was a business analyst for a computer programming company. Intervenor has owned several businesses[2] and in some years owned more than one business at a time.

Intervenor did not maintain books and records for the businesses in 2001 but retained some receipts. Petitioner did

---

[1]Petitioner and respondent executed the stipulation of facts. Intervenor refused to sign the stipulation of facts.

[2]The record reflects the following businesses: Midwest Appliance, Computer Navigations, Spylink, Envoy, MBoy, Telesoft, Genco, an unnamed business operated through ebay, and PointsPro. Petitioner and intervenor agreed that at some point intervenor operated at least four separate businesses which centered around Computer Navigations.

not participate in any of intervenor's business enterprises in 2001. In some years petitioner assisted in bookkeeping, but she did not regularly participate in any of the activities in 2001.

Intervenor was arrested in early 2002. Petitioner and intervenor obtained a second mortgage on the marital home and incurred credit card debt[3] to pay some of the costs involved in intervenor's defense. Intervenor was ultimately convicted of sexual battery of a third party in June 2002. While incarcerated,[4] intervenor elected to participate in an accounting class. Although petitioner and intervenor remained married throughout intervenor's incarceration and after his release, their marriage deteriorated in late 2007. Petitioner and intervenor separated in September 2007. A final judgment of dissolution of marriage was entered by the Hillsborough County, Florida Circuit Court in November 2008.

The court judgment allocated various assets and liabilities between petitioner and intervenor. Petitioner was allocated bank accounts in her name, the marital home, her retirement accounts, and an automobile. Intervenor was allocated his business(es),[5]

---

[3]The credit card was in petitioner's name. The record reflects that petitioner is solely responsible for the first and second mortgages and the credit card debt.

[4]The record does not reveal the dates of intervenor's incarceration.

[5]The final judgment of dissolution of marriage lists
(continued...)

some personal property, two automobiles, and a motorcycle. Petitioner was also allocated approximately $306,000 of debt, including the first and second mortgages on the marital home, all of the credit card debt (including credit card debt in the name of intervenor's business Computer Navigations), and all of the tax debt. Intervenor was allocated about $23,000 of debt, comprising loans from his family to help pay for his criminal defense. The court's final judgment of dissolution of marriage stated: "Husband was routinely less than forthcoming in this case and not always completely credible. Accordingly, there shall be no equalizing payment owed by the Wife and it will be presumed that the Husband is actually a bit better off in assets than * * * [the allocation] might suggest."

The 2001 Return

Petitioner and intervenor did not timely file their 2001 Federal income tax return. Some time after the 2001 tax year, intervenor estimated that $4,000, together with petitioner's withholding, would be sufficient to pay the 2001 tax liability. As a result of intervenor's estimate, petitioner made a $4,000 payment on the due date of the 2001 return, with the intention of preparing and filing the return after intervenor's criminal

---

[5](...continued)
Computer Navigations as his only business, but the record reflects that he owned multiple businesses at the time of the divorce.

proceeding had concluded.  Petitioner and intervenor did not file their 2001 return until 2007.

Petitioner and intervenor also failed to timely file Federal income tax returns for 2002, 2003, 2004, and 2005.  In 2007 petitioner and intervenor met with the Internal Revenue Service (IRS) with regard to their delinquent returns.  Petitioner and intervenor agreed with the IRS that they would file their delinquent returns over a period of time.

Petitioner and intervenor had the returns for 2001 through 2005 prepared by a certified public accountant (C.P.A.).  Intervenor also hired a tax attorney.  In gathering documentation for the return preparation, petitioner recorded the receipts onto a spreadsheet, and she and intervenor turned over all of the records and receipts to the C.P.A.

The 2001 return reflected petitioner's salary and withholding, intervenor's profits from two businesses,[6] and tax due of $12,489.  Although the 2001 return showed tax due, intervenor, petitioner, the C.P.A., and the tax attorney believed that overpayments for other years would be sufficient to offset the tax due for 2001.

---

[6]Both businesses are S corporations listed on the Schedule E as Computer Navigations, Inc., but are listed as having different amounts of nonpassive income.  The record does not reflect intervenor's relationship to the businesses, whether intervenor operated two businesses with the same name, or whether the entries are errors.  On the 2001 Federal income tax return, intervenor is listed as a consultant.

When the 2001 return was presented to petitioner for signature in 2007, intervenor assured petitioner that if there was tax due after application of the expected overpayments from other tax years, intervenor would be able to pay the balance with income from his current businesses.[7] In order to support his statement to petitioner that he would pay any balance due, intervenor showed petitioner a bank statement from one of his businesses reflecting approximately $10,000 in gross receipts during a 1-month period. Petitioner was also aware that intervenor kept cash in his safe. When the 2001 return was signed in 2007, not all of the delinquent returns had been prepared and filed.

The record does not reveal the dates of filing of the subsequent years' returns. However, it appears that to the extent the returns reflected overpayments, some credits or refunds may have been limited or barred pursuant to section 6511. Shortly after the delinquent returns were filed, intervenor moved out of the marital home.

---

[7]In 2007 intervenor operated at least two businesses: Points Pro and Computer Navigations. Intervenor's main source of income in 2007 was Points Pro, a poker business.

The Request for 6015 Relief

Petitioner requested relief from joint and several liability for 2001 in October 2007.[8]  On February 5, 2009, the IRS Appeals Office issued a final determination denying petitioner relief. Respondent determined that:  (1) Petitioner had not established that she would suffer economic hardship, (2) petitioner has a legal obligation to pay the tax, and (3) petitioner has not been in compliance with Federal income tax laws with respect to her taxes for years after the claim year (2001).  Petitioner timely filed a petition for review of the notice of determination.  On August 31, 2009, intervenor filed a notice of intervention.

At trial respondent conceded that petitioner is entitled to partial relief under section 6015(f) and should be relieved of the liability attributable to intervenor's income for 2001. Intervenor opposes any such relief.[9]

## Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return.  Sec. 6013(a).  After making the

---

[8]Respondent has agreed that petitioner's request was timely.

[9]The record in this case is unclear as to the amount of relief respondent conceded and the balance respondent claims petitioner still owes.  It would appear that any tax liability attributable to petitioner would have been fully paid by her withholding and the $4,000 payment in 2002.  It appears that a portion of the remaining balance is due to a failure to file addition to tax.  Because of our conclusion infra that she is entitled to relief, we need not make further findings on this question.

election, each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). In certain circumstances, however, a spouse who has filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Sec. 6015(a).

Except as otherwise provided in section 6015, the requesting spouse bears the burden of proving that he or she is entitled to section 6015 (innocent spouse) relief. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). However, in an instance such as here where the Commissioner has proposed to give partial relief but the intervenor opposes the relief, the Court may decide the matter according to the preponderance of the evidence. See Stergios v. Commissioner, T.C. Memo. 2009-15. Both the scope and standard of our review in cases requesting equitable relief from joint and several income tax liability are de novo. Porter v. Commissioner, 132 T.C. 203 (2009).

Under section 6015(a) a spouse may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability according to provisions set forth in section 6015(c). Petitioner is not eligible for relief under section 6015(b) or (c) because she had an underpayment of tax on a joint return, not a deficiency or an understatement of tax. See Rev.

Proc. 2003-61, sec. 2.04, 2003-2 C.B. 296, 297. Therefore, her only avenue for relief is under section 6015(f).

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, sets forth threshold requirements before the Commissioner will consider a request for relief under section 6015(f). All requesting spouses must meet seven threshold requirements: (i) The requesting spouse filed a joint return for the taxable year for which he or she seeks relief; (ii) relief is not available to the requesting spouse under section 6015(b) or (c); (iii) the requesting spouse applies for relief no later than 2 years after the date of the IRS' first collection activity after July 22, 1998, with respect to the requesting spouse; (iv) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (v) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (vi) the requesting spouse did not file or fail to file the return with fraudulent intent; and (vii) absent enumerated exceptions, the income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return. This Court employs those factors when reviewing the Commissioner's denial of relief. Washington v. Commissioner, 120 T.C. 137, 147-152 (2003); see also Schultz v. Commissioner, T.C. Memo. 2010-233. Respondent agrees that petitioner met the threshold

conditions[10] with respect to the tax attributable to intervenor's 2001 income to be eligible for section 6015(f) relief found in Rev. Proc. 2003-61, sec. 4.01.

If the threshold conditions are met, the IRS will ordinarily grant equitable relief with respect to underpayments on joint returns if the following elements are satisfied generally: (1) On the date of the request for relief, the requesting spouse is no longer married to or is legally separated from the nonrequesting spouse; (2) on the date the requesting spouse signed the joint return, the requesting spouse had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability; and (3) the requesting spouse will suffer economic hardship if the IRS does not grant relief. Id. sec. 4.02, 2003-2 C.B. at 298. The IRS denied relief on the basis of petitioner's failure to meet element (3).

I. Factors

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the IRS may nevertheless grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at

---

[10]Intervenor argued that the petitioner fails requirement (iii) and that petitioner's request was not timely, but intervenor has presented no evidence to support his assertion. In agreeing that petitioner is entitled to partial relief, respondent concedes that the request was made timely. Additionally, there is nothing in the record to indicate that the IRS had begun collection efforts against petitioner.

298.  The Court's analysis with respect to the nonexhaustive list of factors in Rev. Proc. 2003-61, sec. 4.03 is discussed below.

A.  Marital Status

The IRS will take into consideration whether the requesting spouse is divorced or separated (whether legally separated or living apart) from the nonrequesting spouse.  Id. sec. 4.03(2)(a)(i).  We look to petitioner's marital status at the time of trial in applying de novo review.  See Wilson v. Commissioner, T.C. Memo. 2010-134.  At the time of trial petitioner was divorced.  This factor weighs in favor of relief. See id.; see also McKnight v. Commissioner, T.C. Memo. 2006-155 (divorce weighs in favor of relief under Rev. Proc. 2003-61).

B.  Economic Hardship

The IRS will take into consideration whether the requesting spouse will suffer economic hardship if relief is not granted. Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii).  Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses. Butner v. Commissioner, T.C. Memo. 2007-136.

When petitioner requested innocent spouse relief in October 2007, she claimed that her monthly gross wages were $5,665.92 and that her expenses were $6,805.93.[11]  Respondent concluded that

_____

[11]Petitioner's net wages were $4,622.89 and her expenses (excluding taxes deducted from her paycheck) were $5,762.90.

petitioner would not suffer economic hardship on account of the disallowance of the $1,831 monthly credit card payments as a basic living expense.

In July 2008 petitioner provided a bank statement and a list of expenses to the IRS. At that time, petitioner's monthly net wages were $4,285.66 and expenses were $4,629.03 (including $1,708.90 for credit card payments).

At the time of trial, petitioner's annual salary was approximately $74,000. Petitioner has not claimed to be supporting any children or dependents. Petitioner claims to have suffered economic hardship largely because of her assumption of the first mortgage, the second mortgage, and all of the credit card debt as provided for in the final judgment of dissolution of marriage.

At the time of the divorce the credit card debt totaled approximately $50,000. Petitioner also had $30,289.52 of equity in the marital home, $10,066.08 in her section 401(k) plan account, and $32,200 in her pension. The division of assets as outlined in the divorce shows an ability to fully satisfy all of petitioner's debts (including the tax liabilities) at the time of the divorce. Petitioner has not alleged any diminution of her assets since the divorce.

We cannot conclude with certainty that petitioner would be unable to pay reasonable living expenses if the tax were collected. We conclude the economic hardship factor weighs against petitioner. See Butner v. Commissioner, supra.

C.    Knowledge or Reason To Know

The IRS will also consider whether the requesting spouse did not know or had no reason to know that the nonrequesting spouse would not pay the income tax liability. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A). In the case of a properly reported but unpaid liability, the relevant knowledge is whether the taxpayer knew or had reason to know when the return was signed that the tax would not be paid. See Washington v. Commissioner, 120 T.C. at 151. As is relevant here, the IRS will consider any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business and household financial matters, and the requesting spouse's business or financial expertise in determining whether the requesting spouse had reason to know the nonrequesting spouse would not pay the income tax liability. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(C).

Petitioner was not involved in intervenor's businesses, nor was she routinely involved in any of the businesses' finances.[12] Petitioner paid household bills out of her separate accounts. The record does not reflect that petitioner had any business or financial expertise. Intervenor ran his own businesses for many years and participated in an accounting class while incarcerated. When the 2001 return was signed and showed tax due, intervenor showed petitioner a bank statement which reflected gross receipts of $10,000 in one month. Although petitioner and intervenor believed overpayments in other years would offset some or all of their tax liability for 2001, intervenor assured petitioner that the amount ultimately due would be paid from his businesses' income.

We conclude that petitioner had no knowledge or reason to know that intervenor would not pay the tax. This factor weighs in favor of relief. Id. sec. 4.03(2)(a)(iii)(A).

---

[12]Petitioner was involved in one of intervenor's businesses in 1981 before her marriage in 1984, including its bookkeeping. There is no evidence that petitioner was involved in intervenor's businesses in 2001. When the 2001 return was prepared in 2007, petitioner entered some receipts onto a spreadsheet which she then provided to the C.P.A., but there is no evidence that petitioner routinely participated in the bookkeeping of any of intervenor's businesses in 2007.

D.   Nonrequesting Spouse's Legal Obligation

The IRS will also consider whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv).

Petitioner was allocated the tax liabilities in the final judgment of dissolution of marriage.  Additionally, the judgment states that petitioner requested that all other debts be allocated to her in exchange for exclusive use and occupancy of the marital home and to obviate the need for any equalizing payment to intervenor.  This factor weighs against relief.  Id.

E.   Significant Benefit

The IRS will consider whether the requesting spouse received significant benefit beyond normal support as a result of the unpaid tax liability.  Id. sec. 4.03(2)(a)(v), 2003-2 C.B. at 299.

Neither respondent nor intervenor has argued and there is no evidence indicating that petitioner received a significant benefit as a result of the unpaid liability.  Therefore, the Court concludes that this factor weighs in favor of relief.  See Magee v. Commissioner, T.C. Memo. 2005-263 (lack of significant benefit weighs in favor of relief under Rev. Proc. 2003-61).

F.    Compliance With Federal Tax Laws

The IRS will take into consideration whether the requesting spouse has made a good faith effort to comply with the Federal tax laws in the succeeding years.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi).

Petitioner and intervenor did not timely file returns for 2001, 2002, 2003, 2004, and 2005.  Petitioner filed a 2006 return in October 2007 as married filing separate after intervenor moved out of the marital home.  Since the separation from intervenor, petitioner has timely filed returns for 2007, 2008, and 2009.[13]

We conclude petitioner has made a good-faith attempt to comply with Federal tax laws.  This factor weighs in favor of granting relief.  See Stephenson v. Commissioner, T.C. Memo. 2011-16.

G.    Abuse

The IRS will also consider whether the nonrequesting spouse abused the requesting spouse.  See Rev. Proc. 2003-61, sec. 4.03(2)(b)(i).  The presence of abuse is a factor favoring relief, and a history of abuse may mitigate the requesting spouse's knowledge or reason to know.  Id.  If abuse is not present, then this factor is deemed neutral.  See id. sec. 4.03(2)(b).

---

[13]Petitioner claimed married filing separately filing status on her 2007 return.

Petitioner claimed in her request for relief (filed after her separation from intervenor) that she was not a victim of spousal abuse. This is a neutral factor. See Magee v. Commissioner, supra; see also Rev. Proc. 2003-61, sec. 4.03(2)(b)(i).

H.   Mental or Physical Health

The IRS will take into consideration whether the requesting spouse was in poor mental or physical health on the date she signed the return or at the time relief was requested. See Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii). If the requesting spouse is not in poor mental or physical health, this factor is deemed neutral. See id. sec. 4.03(2)(b).

Petitioner did not claim that she was in poor mental or physical health on the date she signed the return or at the time the relief was requested; therefore, this factor is neutral. See Magee v. Commissioner, supra; see also Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii).

II.  Conclusion

Of the factors listed in Rev. Proc. 2003-61, sec. 4.03, four favor relief (marital status, lack of knowledge or reason to know, good-faith effort to comply with tax laws, and lack of significant benefit), two weigh against relief (economic hardship and nonrequesting spouse's legal obligation), and two are neutral (lack of spousal abuse and mental or physical health). After

considering and weighing all the factors, we find it would be inequitable to hold petitioner liable for the 2001 tax liability which is attributable to income earned by intervenor. Accordingly, we hold that petitioner is entitled to relief from joint and several liability under section 6015(f) for the portion of the underpayment attributable to intervenor's income for 2001.

   To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.